CRESOE *against* LAIDLEY.

*Philadelphia,*
*Thursday,*
January 11.

THIS was an ejectment for a house and lot in the city of *Philadelphia,* under the following circumstances, which were stated in a case for the opinion of the court:

*A.* dies intestate, seised of real estate which descended from his father, and leaving a mother and brother of the half-blood, a paternal aunt,

*Samuel Eldridge* of the city of *Philadelphia* died intestate on the 13th of *October* 1804, seised of the premises in the and several cousins, the children of deceased paternal great uncles and aunts. This is a *casus omissus* in the intestate laws, and the estate descends to the heir at common law.

The heir at common law takes in all cases, except in those which are specifically enumerated in the acts of assembly.

declaration mentioned. At the time of his death, his wife was enseint of a son who was born on the —— day of ——, 1804, and named *Samuel*, to whom the premises descended, and who became seised thereof. The widow of the intestate afterwards intermarried with *John Harland* junior, by whom she had issue a son now living, shortly after whose birth, *Samuel Eldridge* the younger died seised of the premises, an infant, unmarried, and without issue, leaving the following relations, on the maternal side, viz. a *brother of the half blood, a mother*, a maternal grandfather and grandmother. On the paternal side he left,

1. *Jane Smith* the only child of *Elihu Eldridge*, who was the oldest son of *Daniel Eldridge*, the oldest son of the intestate's great grandfather; and *Daniel Eldridge* the second son of the said *Daniel*.

2. *Thomas Eldridge, William Eldridge*, and *Mary Bishop*, the children of *Thomas Eldridge* the second son of the said great grandfather.

3. *Martha Garetson*, the daughter of *Esther*, who was a daughter of the said great grandfather.

4. *Zilpah Hand* and *Jehu Eldridge*, the children of *Eli Eldridge*, who was the fourth son of the said great grandfather.

5. *Hannah Cresoe*, (the plaintiff) a daughter of the said great grandfather, and the intestate's paternal great aunt.

The question for the opinion of the court was, whether the premises descended to the heir at common law, or were to be distributed under the intestate laws of *Pennsylvania;* and if the latter, to how much if any the plaintiff was entitled.

*Binney* and *Hopkinson* for the plaintiff. The case in a short compass is this. The intestate died seised of real estate which descended to him from his father, leaving on the maternal side a *brother of the half blood*, a *mother*, grandfather and grandmother, and on the paternal side, a great aunt, and the children of paternal great uncles and great aunts. The question, is how is the estate to go? We contend that it is to be distributed according to the act of assembly of the 19th *April* 1794, 3 *St. Laws* 521, and that the plaintiff takes one fifth. The 12th section of that act directs that " the real and personal estate of any person dying

1810.

CRESOE
v.
LAIDLEY.

" intestate, in case such person leaves neither widow nor " lineal descendant, nor father *or mother*, or brothers or " sisters of the whole or *half blood*, shall descend to and be " divided among the next of kin of equal degree." Within the spirit of this and other sections of the act, he did not leave either a mother, or brother of the half blood. 1. As to the mother. She is to be considered with relation to his paternal estate, as having died before him. The 7th section provides, that in case any person shall die seised, leaving no widow nor lawful issue, nor father, but leaving a *mother*, the whole of the real estate shall be enjoyed by the mother during her life, *unless it came to the intestate on the part of his father*, in which case such estate shall descend, pass, and be enjoyed, as if such person so dying seised, *had survived his mother*. It is a principle which runs throughout the act, that where, in case the intestate does not leave a *particular relation*, the estate is given to another person, the law always means a particular relation *capable of taking;* and if he is not, it is the same as though he did not exist. And the reason of it is this, that in no instance does the law give the estate to another person, in case the intestate does not leave a particular relation, without having previously provided that the particular relation shall take if he is capable of taking. For instance, by the 5th section, if the intestate dies leaving neither widow nor lawful issue, but a father, the father takes the real estate for his life, unless it came on the part of the mother; in which case it goes as if the intestate had survived his father. The 6th section directs, that in case he shall leave neither widow nor lawful issue, but a *father* and brothers and sisters, the estate shall descend to and be enjoyed by the brothers and sisters as tenants in common, *after the decease of the father*. Here the law evidently means a father *capable of taking*, because by the prior section, it would go to the brothers and sisters at once, if the father was not capable. Then comes the 7th section before referred to, containing the provision as to the mother; and the 8th section, analogous to the 6th, directs, that in case the intestate leaves neither widow nor lawful issue, but a mother and brothers and sisters, the estate shall descend to and be enjoyed by the brothers and sisters, as tenants in common, *after the decease of the mother*. Here also the law means a

mother *capable of taking*, because if she was not, it would go at once by the 7th section to the brothers and sisters. In this manner the act proceeds, making provision in each section for a new relation, in case the intestate leaves none of the relations mentioned in the former sections, until it comes to the 12th, where the mother spoken of, must upon the same principle be intended a mother capable of taking; and therefore the intestate's mother, who cannot take, cannot interrupt the descent to the next of kin. By any other rule of construction, the paternal estate of an intestate, who leaves a mother and brothers and sisters, instead of going to the latter, will descend to the heir at common law. 2. As to the brother of the half blood. The same rule of construction governs his case. The 11th section gives the real estate of an intestate who leaves no children or lawful issue, father or mother, brothers or sisters or their issue of the whole blood, to brothers and sisters of the half blood and their issue, in preference to the more remote kindred of the whole blood, unless the estate came to the intestate by descent, devise, or gift of one of his ancestors; in which case, all who are not of the blood of such ancestor are excluded; and therefore when the 12th section gives the estate to the next of kin, in case he leaves no brothers or sisters of the half blood, it means of the blood of the ancestor from whom the estate came, which the half brother of *Samuel Eldridge* is not. It follows from the whole, that *Samuel Eldridge* left none of the relations mentioned and intended in the 12th section, and that the plaintiff is entitled to one fifth as his next of kin.

*Rawle* and *Lewis* for the heir at law. It is a principle, not only of the utmost importance to give certainty to the law of descents, but sanctioned by the highest judicial authority in this state, that the common law still regulates descents in *Pennsylvania*, in every case which is not expressly provided for by act of assembly. The decision in *Johnson* v. *Haines's Lessee* (a), under the law of 1794, fixes the rule, that wherever an encroachment on the common law takes away a right, which would otherwise be vested in the heir at law, the operation of the statute should not be extended further, than

(a) 4 *Dall.* 64.

it is carried by the *very words* of the legislature. The parti-
cular case was an illustration of the strictness with which
that rule is applied. The intestate did not leave a father or
brothers and sisters, but the issue of brothers and sisters
who were dead; and they claimed under the 6th section,
which provides for the case of a person dying seised, and
leaving a father and brothers and sisters. It was said there,
as well as in this case, that the spirit of the law would divide
the estate among the issue; but it was answered, that if they
took at all, they must take by the letter, and that not being
in their favour, the whole must go to the common law heir.
That answer is justified by a train of *English* authorities,
which it is not necessary to notice. The result of them is
stated in *Piggot* v. *Penrice* (*a*), to be " a most known and
" established rule of law, that an heir is never to be disinhe-
" rited but by express words or necessary implication." Un-
der which section then can the plaintiff take? It is not sup-
posed that any one provides for the case but the 12th; and
yet here are a mother and a brother of the half blood living,
who, to give the next of kin a right, by the express terms of
that section should have died in the lifetime of the intestate.
The construction by which this difficulty is gotten over, can-
not be allowed for several reasons. First because it disin-
herits the heir by what is supposed to be the spirit, and not
by the words, of the law. Secondly, because where the legis-
lature intended that the life of a person incapable of taking
should not interrupt the distribution, they have expressly
said so, as in the 5th and 7th sections; and they have omit-
ted it in the 12th. Again, because the 5th, 6th, 7th, and 8th
sections, which are borrowed to aid the 12th, do not relate
to the same kind of estate. The former regulate the distri-
bution of estates which came to the intestate from the part
of his father or mother, and which are therefore to go to the
heirs of the father or mother respectively. The latter relates
to an estate purchased by the intestate, and therefore the
half-blood are admitted to come in. This shews moreover
that the 12th section cannot affect the paternal estate of *El-
dridge*. But the decisive objection to the construction is, that
the legislature by a supplementary law of the 4th *April* 1797,

1810.

CRESOE
*v.*
LAIDLEY.

(*a*) *Gilb. Rep. in Eq.* 138.

4 *St. Laws* 155, supplied all the omissions in the law of 1794, which it was thought proper to supply, and made no provision for the case of the plaintiff. This law shews that the legislature thought the first act was confined to enumerated cases, and that no latitude was to be allowed in the construction of it. They have now made provision for some other cases, particularly for that of *Johnson* v. *Haines;* and therefore, even if it was in the power of this court, before the last law, to make a construction of the original act according to equity, yet now it cannot be done, because the legislature have stated all the additional cases to which the principle of distribution shall be applied. *Dalbury* and *Foston* (*a*), *The Queen* v. *The Inhabitants of Buckingham* (*b*).

*Reply.* *Johnson* v. *Haines* does not apply, because no construction however liberal, could have made the case of a father who died before the intestate, the same as the case of a father who survived him. But we have the authority of the law for saying, that in certain cases a mother who survives, is to be considered as dead, particularly within the 12th section. The rule contended for by the heir at law, is not only productive of the greatest hardship, by making persons who cannot take the estate themselves, prevent others from taking it, but it is so strict as almost to defeat the law; for if we are to adhere to the words, brothers and sisters would not be satisfied by one brother, nor even by a brother and sister. But the same strictness is not to be used in construing a statute as a will, particularly this statute, whose object it was to break up the common law rule of inheritance, and which expresses in every line an aversion to the common law heir. If the act of 1797 had been *explanatory*, the cases from *Carthew* and *Salkeld* would have applied; but it is merely an additional statute, which does not in any way infringe the right of the court to construe the terms of the original act, according to the spirit of the sections taken as one system.

TILGHMAN C. J. delivered the court's opinion.

The court are to give their opinion on a case stated, the material parts of which may be comprised in a small compass.

(*a*) *Carth.* 396.                    (*b*) 2 *Salk.* 534.

Samuel Eldridge died intestate, seised of lands in fee-simple, which had come to him by descent from his father. He left, living at the time of his death, a mother, a brother of the half blood on the part of his mother, a maternal grandfather and grandmother, a paternal great aunt (the plaintiff), and several cousins, children of paternal great uncles and great aunts. The plaintiff claims one fifth part of Samuel Eldridge's lands, as one of his next of kin. The defendant holds under the heir at common law. The question is, whether this case is included in either of the acts directing the descent of real estates of persons dying intestate.

On the part of the plaintiff it has been contended, that this case is included, not within the words, but the spirit and intent of the 12th section of the act of the 19th April 1794. That section is in these words: " The real and personal " estate of any person dying intestate, in case such person " leave neither widow nor lineal descendant, nor father, or " mother, or brother or sister of the whole or half blood, or " lawful issue of any brother or sister of the whole or half " blood, shall descend to and be divided among the next of " kin of equal degree," &c. The case before the court differs from this section of the law in two respects. The intestate left a mother and a brother of the half blood. The plaintiff's counsel get over this, by endeavouring to prove from other parts of the law, that neither the mother nor brother of the half blood on the part of the mother, can take any thing in this case, where the estate descended to the intestate from his father. This being the case, they think it unreasonable that their existence should prevent the next of kin from taking. They construe the words " mother or brother of the " half blood," by adding to them the words " capable of " taking any thing under this act." We think that the principles on which the law must be construed, were fixed by the case of Johnson v. Haines, 4 Dall. 64, decided by the unanimous opinion of the High Court of Errors and Appeals. The rule there laid down by Chief Justice M'Kean, who delivered the opinion of the court, was that the heir at common law should take, except in the specific cases enumerated in the act. The case there decided was full as hard as the present. There could not be a doubt but the legislature would have included it in the act of 19th April 1794, if it

1810.

CRESOE
v.
LAIDLEY.

had occurred to them. But the decision was founded on wise principles. It tended to produce certainty, which is of the utmost consequence in the law of descents. We may easily know the law, when it is established that the heir at law takes in every case not specified in the acts of assembly; but there will be no end to difficulties, if we attempt to supply the omissions of the acts, by inserting what we may suppose to have been intended by the legislature. There is another powerful reason for the strict construction of the act of 19th *April* 1794. It was discovered to be defective in many respects, to remedy which, the act of 4th *April* 1797 was passed. That act included the case which had occurred in *Johnson* v. *Haines*, and many other omitted cases; but it made no alteration in the 12th section of the first act, on which the present question turns. Now the latter act being made for the express purpose of supplying the defects of the first, it must be supposed that the first act was examined with great attention, and every alteration introduced, which was thought necessary. I make no doubt but many cases are still unprovided for, because they were unseen. As they occur from time to time, they may be included in new laws, if it shall be judged expedient. In the mean time the heir at common law will take in all such cases. Upon the whole, we are clearly of opinion, that the plaintiff is not entitled to recover, because she has not brought her case within either of the acts of assembly.

Judgment for the defendant.