Tii.ghman C. J.
■ The plaintiff claims as heir of his brother Thomas Lee Shippen, deceased, two parcels of land, one of which was devised to the said Thomas, by his father, Thomas L. Shippen, the other by his grandfather, William Ship-pen. I will first consider that which was devised by the father.
It is enacted, by the 7th section of the act of 19th April, 1794, “that in case any person so as aforesaid, seised, or pos- “ sessed, shall die, leaving neither widow, nor lawful issue, “ nor father, but leaving a mother, the whole of the real es- “ tate shall be enjoyed by the mother of the intestate, for, “ and during the natural life of such mother, and the perso- “ nal estate of the said intestate shall pass and be vested in *224 “ the said mother absolutely, unless the said real and perso- “ nal estate, or either of them came to the person so dying “ seised or possessed, from the part of his or her father, in “ which case the said estate or such part thereof, as shall have “ come from the part of his or her father, shall descend, pass, “ and be enjoyed or possessed, as if such person, so dying “ seised or possessed, had survived his or her mother.” The brother under whom the plaintiff claims was precisely in the situation described in this section. He left neither widow, issue, nor father, but a mother, who will be entitled to the whole for her life, unless the land came to the intestate from the part of his father. The only question then is, did it so come? Within the general and popular meaning of the words, it did so come, for it was devised to him by his father. It must be understood then to have come from the father unless it clearly appears by other parts of the act, that the expressions come to are used in the restricted sense contended for by the defendants, that is to say, a coming by descent. It lies upon the defendants to make out clearly the meaning for which they contend, because their claim is contrary to the course of the common law. Arguments have been drawn on both sides from a comparison of the different parts of the act, but so far as such comparison affords ground for inference, I think it adverse to the defendant’s construction. That the wofds come to were understood by the legislature to be applicable to a devise, appears by the 11th section, where we find the expressions of an inheritance coming to a person by dhscent, devise, or gift. In other parts too, particularly in the 3d section, the word desceñáis frequently used, which shews that this expression was introduced where it was judged necessary. If the defendant’s construction is not supported by the words of the law, still less so is it, by what we may suppose to be its spirit. It is reasonable, that land which was devised to a son by his father’s will, or suffered to descend to him, should continue in the line of the father, without the mother’s taking any part of it; because it must be supposed that the mother has been provided for out of the estate of the father. This reason is equally strong in both cases, and therefore there is no ground for difference. Neither is it unreasonable that the mother should be excluded, when the land was conveyed by the father to the son by deed or gift, or •where- it was conveyed or devised, or suffered to descend tb *225 him by any ancestor, in the paternal line. For this is no more than preserving the land in the line in which it was originally required ; and that such was the intent of the legislature may be pretty clearly perceived from a view of the whole law. The expressions from the part of the father, and from the father, are so different, that I cannot conceive how the former can be restricted to the father alone, without doing manifest violence to their plain meaning. Not only is there a difference in common parlance, but in legal acceptation. For the phrase on the part of the father, is familiar to the common law, and must have been borrowed from that source by the persons who drew this act of assembly. That it comprehends not only the father, but all the ancestors of the father, both paternal and maternal, appears by the citation of the plaintiff’s counsel from Co. Litt. 12 a. The defendant’s construction of the words “ shall have come from the part of “ his father,” is that the land must have descended immediately from the father. But this construction is certainly too narrow. For if there could be a doubt as to the meaning attached to these words in the 7th section, considered without reference to any other part^f the law, it would be removed by adverting to the 5th section, where we have the expression come on the part of the mother. In this section is mentioned the case of a person dying seised of land, leaving neither widow nor issue, but a father, and in such case it is provided, that the father shall enjoy the estate for his life unless it come to the person so dying seised on the part of his mother, in which case it shall descend, as if such person had survived his father. This provision cannot be applicable to land descended from the mother, for in such land the father would have an estate for life, as tenant by the courtesy. Therefore it can only apply-to land which was conveyed by the mother to the child, or which, after the death of the mother, descended to the child, from some person in the maternal line. I will not say, that the construction of this law is free from difficulty. To frame a new system of inheritance was an arduous task, and in the first essay there were many imperfections and omissions. Some of them have been remedied by subsequent laws, and some remain yet to be remedied. On the present occasion, I prefer the construction which is the most natural and most agreeable, to what I suppose to have been the view of the legislature. I considetr *226 land as having come to the intestate from the part of his father, when it came to him by gift, devise, or descent, either immediately from the father, or from any person in the line of the father. Both parcels of land claimed by the plaintiff fall within this description* I am, therefore, of opinion, that judgment should be entered for him for the whole.
Yeates J.
This case is embraced by the provisions' of the /th section of the act of 19th April, 1/94, and the question turns on the true construction thereof.
The legislature appear therein to have had two objects in view; to abolish the feudal principle, that lands cannot lineally ascend, and that sisters shall inherit equally with their brothers : but in this and other parts of the act, sedulous attention is shown, that the property shall not go out of the line of the father or mother who acquired it respectively. Such a principle is highly congenial to our feelings in family arrangements, and operates powerfully as an incentive to honest industry.
The meaning of the law is to be collected from all its parts taken in connexion with each other. It cannot be denied, that the words “ come to,” in their common acceptation, may with perfect propriety be referred to real or personal estate derived through any channel, by the voluntary act of the donor, either by will or other gratuitous benevolence taking immediate effect, or by the operation of law. They are so used in the 11th section of this act, where the expressions are, “unless where such “ inheritance came to the said person so seised, by descent, de- “ vise or gift, of some one of his or her ancestors,” &c. No reason can be given, why the words should not be taken in the same large, comprehensive sense, in the section under consideration, and particularly so, when under a different Construction a strange absurdity would be introduced. For unless, under some kind of family settlements, (which are not common in this country,) no case can occur, where a child can take either real or personal estate under the mother, living the father, by descent, and yet the law supposes such a case, and in such instance provides a restriction- as to the father. I therefore think, that the lands-devised to Thomas Lee Shippen, in 1798, by his father, came to the devisee on the part of his father, and to be clearly within the exception in the act, as to the mother’s- taking the- same- during her natural life.
*227 I have had' more difficulty in forming my judgment as to the lands devised by the grandfather. I considered at first, that the restriction as to the mother, was confined to real and personal estate coming immediately from the father, upon the ground that a father making certain provisions in his will for the mother, must be supposed to have given her a proper portion of his property, and that he intended the residue for their offspring, and that this consideration must have greatly influenced the legislature herein. But more mature reflection has satisfied my mind on this subject. The words “ on the “part of the father” are technical legal terms, carrying an appropriate precise meaning, and in this sense, we must suppose the legislature adoped them, unless there appears an evident intention to the contrary. In Littleton, sect. 4, we find it thus written. “ In case where the son purchases land in fee “ simple, and dies without issue, they of his blood on the “ side of the father, (de part son pier in the original text) “ shall inherit as heir to him, before any of the blood on the “ side of the mother, (de part sa mere in the text), &c.” The word is not “ from” the father, but “ on the part of the a father f which are evidently borrowed from the common law phrase; and taking them in that sense, Mrs. Izard is plainly excluded from these lands. I am therefore of opinion, that judgment be entered generally for the plaintiff.
Brackenridge J. was of the same opinion.-
Judgment for the plaintiff.