The opinion of the Court was delivered by
Duncan J.
On this statement of. facts, the question is, does the real estate of an intestate, coming on the part of his father, descend by She laws of Pennsylvania to his next of *399 ¿in on his father’s side, or does it go to all the next of kin of equal degree to the intestate, whether paternal or maternal kindred, excluding the mother alone.
That the heir at common law takes, except in the cases enumerated in the several Acts directing the descent of intestate’s estates, is a.principle as firmly fixed as uniform decision can establish any doctrine of the law. It was settled by the undivided opinion of the Judges of the Court of Errors and Appeals, Johnson v. Haines, 4 Dall. 64, and has been followed in all subsequent decisions, particularly in Cresoe v. Laidley, 2 Binn. 279. The same rule has been applied in the construction of the Intestate Acts of the State of Maryland, by the. Supreme Court of the United States, in Barnitz's Lessee v. Casey, 7 Cranch, 456. It would be dangerous to admit, that because the Legislature may have expressed an intention to form a scheme of descents, that Courts would supply an omission and bring every case within the specified classes. The enumerated classes are,. first, Where the estate descends or comes on the part of the father or mother. Second, Ascents from child to parent. Third, Estates acquired by intestates, and which have not come on the part of father or mother. Fourth, Descents from brother to sister. Fifth, Where estates come on the part of father and mother, and where the intestate leaves neither father or mother, nor widow, nor lineal descendant, nor brother or sister of the whole or half blood, nor their representatives, in which case it is contended by the plaintiff, it will descend to, and be divided among, the next of kin of equal degree to the intestate, without relation to the ancestor from whom it came and sixth,. That where an intestate dies and leaves no widow or lawful issue, father, brother or sister, or their representatives, the-estate shall be vested inTee simple in the mother, unless where such estate has descended from the part of his or her father, in which case, such part as may have so come, shall pass and be enjoyed as if such person so dying seised, had survived his or her mother. I do not'find the same provision in a case of an intestate so dying, and seised of an estate coming on the part of the mother and leaving a father ; but it is now unnecessary to decide whether this is a casus omissus, though at present I am inclined to think there is no provision that the estate shall go over as if the child had *400 survived the ■ father." It never vests in the father. It is •pretty evident, that it never was the intention of the Legislature of 1794, that under, the 12th sectionj the father living or dead, the maternal estate should depart from the maternal line, as it Would, on the plaintiff’s construction, in the case' of a child leaving a paternal grandfather and a maternal uncle .or aunt; and if the father survived the child, by the same construction it would pass by the father and vest in fee simple, in his father in exclusion of maternal uncles or aunts. A proposition difficult to digest. The plaintiff contends, that.connecting the 5th section of the ‘Act of 1797, . which provides for this sixth class of. cases, with the 12th section of the Act of 1794, providing that the real éstate of any person dying intestate, leaving no widow, lineal descendant, brother or sister, or their representatives of the whole or half blood, shall, descend to and be divided among the'next of kin of equal degree to intestate, then- the case falls within them, and the plaintiff is-entitled as one of the next of kin of intestate. To form a new system of-descent, will always be found an hard task. Human wisdom is -inadequate. to striking out at one . heat a-perfect.ohe, without flaw. It is impossible to foresee all the consequences • of an attempt so important, extensive and ramified. All the consequences and appendages, cannot be provided for by the new rule. Omissions and imperfections as they are discovered, must be supplied and remedied by subsequent laws.,
This case must be approached with all the weight of the authority of Walker’s administrators v. Smith, 3 Yeates, 480 $ for did not this decision stand in the way,-the - Court would have found little difficulty in coming to the conclusion, that it was the manifest and declared intention of the Legislature to preserve the line of descent" in the blood of the ancestor from whom the estate came, for ever and for ever. I cannot distinguish the cases. . It- would be disingenuous to attempt to get round or evade it., It was a contemporaneous decision, the first construction, and if it had been received and acted upon, if under it, estates have been énjoyed and transferred ; became, a rule of property by which the divisions of estates have -been regulated and governed,, it ought not now to be disturbed.' But if it has passed unnoticed until the publication of Mr. Justice, Teales’s Reports—-if it presents but *401 the meagre skeleton of a case, with an instant decision, without any reason assigned but.one, from which a. different conelusion is palpable—if it be inconsistent with the whole canons of descent prescribed by the Legislature, and violates their plain and obvious intention, and is' followed by the most contradictory, absurd,' and unnatural consequences, then as it was not the determination .of a Court of the last resort, I cannot consider.', this Court bound to follow against their own strong convictions. Strange indeed would be the doctrine, that an error or inadvertence once committed, must be persevered in. A Court is not bound to give the like judgment, which has been given by a former Court, unless they are of opinion the judgment was according to húv. Acting otherwise would have this consequence, that because one man has been wronged by a judicial determination, therefore every man having a like case, is to be'wronged also. Vaugh. 383. In Kerlin’s Lessee v. Bull, 1 Dall. 175, C. J. M‘Kean very justly says, that where there has been a determination by two Judges of the Supreme Court, after debate, and, a long acquiescence under it, there ought always to be paid great consideration to. i't, that the law may be certain but in that case he seemed to .accord with the decision,.and to be governed in weighing its authority, by the information he re- ' ceived from the gentlemen of the bar. in different parts of the State, that estates had been distributed agreeably to it; and as the construction there had prevailed and had been received as a rule of property, though some- might not in their private judgment agree with it, were the matter to be newly resolved, he thought it but reasonable to acquiesce and determine in the same way in so doubtful a case, to prevent greater mischiefs which might.arise by shaking.a number of estates, an'dfrom the uncertainty of the law; To all this I subscribe ; and had I a doubt, or did I believe that this decision had been acted upon generally in the division of estates, I would let it rest. Far, very far from me be the desire to unsettle the rules and landmarks of property on my own speculative opinions as to how they ought originally to have been settled. I ami not so presumptuous, as to set up as a reformer, of the-law. It is my humble endeavour, to ascertain as far. as I am able, what the law is, and my pride and comfort, because it is my duty to walk in the ways, qnce relicta sunt et *402 tradita; and if an error has been established, and taken root, on which any rule of property depends, it ought to be adhered to, until the Legislature think proper to alter it, lest determination should have a retrospect, and. shake many titles which had been settled.. .It is not like rules of practice, which may be altered without danger, but rules of property ought not-to be changed with every change of Judges. But this decision is a solitary and unnoticed one— one reason only given. “ Viewing,’’ says the Court, l< this case in the strongest light for the appellants, we cahnot go further than to say* it was a casus omissus, and then the well known remark as to a last will and testament, would be applicable to this, voluit sed non dixit.” This was all they did say ; and for the case of the appellants, they had no occasion to say any thing further ; for if it was a casus omissus, then,according to all the authorities, the heir at.Common law took. I have searched the papers of the learned and venerable reporter, in hopes of finding some more detailed opinion, but can find nothing but what is stated in .the report. One would suppose from-the reason, the Court was about' to pronounce a decree of reversal. The ' mind is not prepared for the conclusion. It imports a different result. The case is a casus omissus, therefore it is to follow, that the heir at common law shall take. It seems not; but because it is not provided for* is it to be taken from him. And why is it to be taken from him.? Because the Legislature have not taken it from' him, voluit sed non dixit. But, this not .so ; they have spoken, they have taken it.from him, or divided, it between him and others ; and the only question is, to whom have they given it ? There must be in this report some mistake,' in the reason there certainly is. The accuracy of Judge Yeates was so distinguished, it is by me po much confided in, that I distrust my own judgment, and have sometimes'thought, that I did not understand the case; and I must eyen now, after having pondered on it for more than a year, confess, that I cannot understand it. It is beyond my reason, to comprehend how from the Court’s own premises, they draw the conclusion. One thing is very certain, as I shall presently shew, that Judge Yeates did not always continue of this opinion. But what was the cardinal design of the Legislature ? To abolish the right of primo *403 geniture, and the feudal doctrine that lands cannot ascend— , to establish an equality of distribution without regard to sexes, always preserving the estate in -that line of descent from which it came. When they pass beyond brothers and sisters of the whole blood, to brothers and sisters- of the half blood, they must be of the blood of the' ancestor from whom the estate came. So where it is to vest in a parent on the death of the child. And where they pass on to more remote kindred instead of one taking the whole, all having inheritable blood standing in equal degree to the intestate, take equally, unless in the case of an acquisition of the intestate; not coming on the part of father or mother, in which case it goes to all his next of kin. The ancestor is removed from our view. The intestate is the prcepositus, and not the ancestor. Wherever the Legislature introduce another,- the inheritable stock, where the estate comes from an ancestor in descents collateral, as- well as. in ascents to a parent, it is with a protestation, .that it shall not go out of the line of the amcestor, as in the 6th section of the Act of 1794 ; if the intestate shall leave no issue, nor brothers or, sisters, nor their representatives, the estate shall go to the father in fee simple, unless it has’come on the part of the mother. So in the 5th and 7th sections ; and so in the 5th section of the Act of 1797, under which the plaintiff claims. But if the 12th section of the Act of 1797, lets in all the next of kin, without regard to blood, the half blood will be let in equally with the. whole; but this cannot be so ; for the 7th section of the Act of 1797, declares, that on failure of brothers and sisters of the whole blood, the brothers and sisters of the half blood shall come in, except such estate of such as came from some one of his ancestors, in which case, (that is in every case where-the estate so comes,) all who are not of the blood of such ancestor shall be excluded from such inheritance. So in the 11th section of the Act of 1794, brothers of half blood take in, preference to remote kindred, of ^he whole blood, unless where the estate come from an ancestor, in which case all who are not of the blood of such ancestor shall be excluded from the inheritance. Here the Legislature recognise in the case of more remote kindred than brothers and sisters, the preference to be given to the whole blood, and consider the blood of the ancestor from whom the- estate came, as alone inhe *404 ritable. “ In preference to the more remote kindred of the whole blood,” is a declaration plain that only such blood can inherit ; and that in descents to remote kindred, so far from losing sight of the blood of the ancestor, their right is acknowledged and preserved. If the exclusion is only applied to a case of an intestate leaving a brother of the half blood, and do not extend to more remote relations, this absurdity would follow, that if one died intestate; seised ex parte paterna, leaving a maternal brother, he would be excluded; but if he left only a maternal uncle, he could take, to the exclusion of more remote paternal relations. The position I maintain, is this, that taking into one view, the whole scheme of descent, under the Acts of 1794 and 1797, it was the intention of the Legislature in every grade of descent, to exclude from the inheritance all who wer.e not of the blood of the ancestor from whom the estate came, and to preserve it in the line in which it came ; in other words, that the ancestor is, the commune vinculum whether the estate ascends or descends. The father may take on the death of his child to whom an estate was given by his father, because he is'of the blood of that father. He will not take where the child takes from a maternal grandfather or grandmother, because he is not of their blood. The declaration in the 7th section of the Act of 1797, and 11th section of the Act of 1794, 1 incorporate into the whole system ; for different statutes made at different times, are to be explanatory of, and construed into, each other, as in the construction of the Statute of Distribution, 22 and 23 Car. 2 c. 14, and statute 1 Jac. 2 c. 16. The proviso of the latter statute, that there shall be no representation beyond brothers, and sisters children, is incorporated into the first, on the rule that statutes in pari materia, shall be construed into each other. These statutes are said to be very incorrectly penned, and therefore the latter is to be construed according to the intention of the Legislature. Stanley v. Stanley, 1 Atk. 455. General words in one clause of a Statute, may be restrained by a subsequent clause ; and there is no difference, whether the restraint be in a prior or subsequent clause; and it is consistent with the true construction of a statute to make a clause conform to other parts of the law,, and its general system. We have a remarkable and apposite instance of this construction in *405 Brown v. Turberville, 2 Call. 390, on the intestate Acts of Virginia, which provided, that if there be no issue, mother, brother or sister, or their descendants, and the estate shall not have-'been derived by purchase or descent from either father or mother, that it shall be divided’.into two moieties, one of which shall go to the paternal, and the other to the maternal kindred, The intestate was an adult, and the Legislature having omitted to confine it to the case of an infant intestate, although it was thei,r-apparent intention to refer it to the former part of - the law which so confined it, the Court, in their construction, interposed the words in case of an infant intestate, so as to make this clause read, “ and the real estate shall not in case of an infant intestate be derived from the father or mother.” Sections are not considered as distinct enactments. Ancient statutes were without sections. All áre parts of the same plan,-and to be drawn together to come at their true meaning ; -if consistency and the sense of the thing require it. A general declaration in one section will run through all, and this is always done when absurd consequences would otherwise .rise. Let us see how this will’work. Nathaniel Forbes, táking from the. father,. is the proprietor, who dies without issue, brothers and sisters of the whole or half blood, or their legal representatives, leaving a mother and Davis Bevan, the plaintiff, the brother of his mother. The mother .cannot take, but the brother can. If he had left a maternal grandfather or grandmother, they would Rave, taken the whole in exclusion of the brothers and sisters (and their children) of the father, for they would be preferred, being nearer of kin, than uncle or aunt, and possibly they would take, though his mother could not. Our humanity is shockedby such distribution where the basis of the law is equality. Our understanding calls for some reason df policy, for this most unnatural preference ; it may call in vain, for none such has been assigned, for none such exists. First, it is said in this remote degree, -blood- was entirely lost sight of, and its rights abolished. If this be so, then the half blood must be let in .under the 12th section, although by the express terms of both acts they are excluded. Again, it is said, all are to be let in, because of the inconvenience of inquiry after'many years, into the question of whom the estate came from. But this does not hold); for-if *406 there is a parent living, you'must-inquire into the fact, or the parent takes the whole.
It is not because nature points out, this course, and the law ma^es disposition which the intestate most probably Would have done, had he made a will from natural affection; for the disposition is most unnatural, and wé cannot ¿úppose that the Legislature forgot, that of all(human be.ings, the father and the mother were the dearest and the nearest next after a man’s own children. But there is another reason assigned; and that is, that under the 12th section of the Act of. 1794, the real and, personal estate are to go together and to the same person,’that as to the personal estate, there is no inquiry from whom it came, but if it was admitted - as to the real, the estates would go differently and to different persons. This at first presents a difficulty; but on analysing it, it furnishes the strongest evidence, that when the Legislature used the term, next Of.kin as to personal estate} it included all the next of kin, under the Statutes of Distribution, unless-otherwise expressed, but as applied to real estáte, it meant only those of .inheritable blood, as in the intestate Act of 1705, Galloways’ Ed. 25, if .no children then to next of kin of intestate in equal degree,is in a subsequent section declared to mean heir at law. So in,the same act, if an intestate dies without known kindred, the real estate sháll escheat to his lord, and.his goods to the proprietary. Known kindred is there construed according to the nature of the property, and differently as to real and personal estate; as to the first signifying next of kin of inheritable- blood., capable of inheriting of the blood'of him from whom the estate came; but as to personal kindred generally without relation to blood; for if it was not so, the land would not have escheated, if there was any,kindred of the half blood—any who would be entitled under the Statutes of Distributions.
There are cases where the same words shall have different constructions, according to the nature of the property to which they are applied. As, where lands and a chattel interest are devised to one, and if he die without leaving issue, then a devise over, the devisee has an estate, tail in the land, leaving no issue being understood as an indefinite failure of issue ; but as to chattel interests; they are construed as leaving no issue at the time of his death, and all laws are to be con *407 strued according to the subject matter. The words, legal representatives, may be referrible either to heirs, executors, or administrators, according to the subject matter, and when' they relate to lands, they are always considered, as referring to heirs, Duncan's Lessee v. Walker, 1 Yeates,213. And there is good reason for the difference in this case, the evidence of the titles, depending on written instruments, may be traced ad infinitum, but chattels being of a fluctuating nature, Consisting often in the use, are incapable of being traced to their origin. - • >
But, if the door were opened to all the'next of kin, without relation to inheritable blood, what is to preivent an alien from taking (as an alien, under the 12th section of the Act of 1794, may take personal estate,) if the real and personal estate must go together. Here is a dilemma. An alien may be next of kin, and take personal estate, he, may be nearést of kin, yet he cannot inherit reabestate, and.why, cannot he inherit? For he is next of kin, and would be included .by the words of the Act. Simply, because in him .there is no inheritable blood. Where the Legislature exclude the mother, it is not an exclusion nominatim, a personal disability. When the Legislature excluded the mother they excluded all, who, in deducing title and pedigree,.drew it from or through.the mother, all on her part. Why is the half blood-even a brother excluded ?. Because the more remote blood of him from whom the estate came, is preferred before those in propinquity of blood of the intestate. . Why is the mother excluded ? Because not of the blood of the ancestor; not because she is not of the blood of the child, but because she is hot of the blood of him from whom it came to the .child. Why, in the name of common sense and common humanity, exclude the mother, and give to the grandmother. Why exclude the mother to let in remote kindred of her line ? If the root cannot take, shall the branches ?
I said the case of- Walker v. Smith was an unnoticed case. It certainly would have been a leading case, where a question on which the doctrine came necessarily before the Court arose, yet, it never has been quoted by the counsel, never stated by the Court; In Cresoe v. Laidley, 2 Binn. 279, this provision in the 12th section was under consideration, its ope *408 ration on a paternal estate was fully and ably canvassed by tjje counsel concerned in this cause, and one of whom was in Walker v. Smith, and it was then contended, that this section had no relation to paternal estate, but was confined to estates purchased by the intestate. It is true, the Court decided it on the ground of casus omissus, the mother and a brother of the half blood living. Still, Walker v. Smith had a strong bearing on the question ; yet it was unnoticed by the counsel, passed over in silence by the Court; and in Harris v. Hayes, 6 Binn. 422, it was again passed over in the Court’s decision without, notice. _ ■
. I am then justified in saying it was still-born, buried in ob~ livion, until the publication of Judge Yeates’s Reports. I have made inquiry in the country, of many gentlemen of the bar. Such a principle they had never heard of, until they found it in these reports, and I am entirely convinced, that by conforming to this decision, more titles would be disturbed, than by rejecting it.
But I said that Judge Yeates did not always continue of the same opinion, and it has relieved my mind of a great weight, to find that he has not done so ; it lessens the heaviness of the duty and responsibility in deciding so important a principle of the law of descents—differently from the very learned and distinguished Judges who preceded us.. For in Shippen v. Izard, 1 Serg. & Rawle, 226, we have the opinion of the Chief Justice and Judge. Yeates ; it is true, it was not the direct matter in judgment, but the minds of the Court were occupied by the different relations of mother and son. The whole law was considered. The Chief Justice says, “if the defendant’s construction is not supported by the words of the law, still less is it so, by what we may suppose to be the spirit. It is reasonable that land which was devised to a son by his father’s will, or suffered to descend to him, should continue in the line of the father, without the mother’s taking any part of it, for this is no more than the preserving it in the line, in which it was originally acquired, and that such was the intention of the Le~ gislature, may be pretty clearly perceived from a view of the whole law.” Coming from the father, is in this case, considered as coming in the line of the father. But still stronger is the observation of Judge Yeates, and in most direct op *409 position to Walker v. Smith. ‘‘ The Legislature had two objects in view, to abolish the feudal principle, that lands cannot lineally ascend, and that sisters shall inherit equally with their brothers, but in this and other parts of the Act, sedulous attention is shewn, that the property shall not go out of the li line of the father or mother, who acquired it respectively.” Such a principle is highly congenial to our own' feelings in family arrangements, and operates powerfully as an incentive to honest industry ; the bearing of the law is to be collected from all its parts taken in connection with each other.” Here then, we have the direct opinions of the spirit, and whole view of the laws, taken in connection ; if I had any doubts, these opinions would remove them; but I never did for a moment doubt, though I might have startled’ at Walker and Smith; coming upon me, as it did by surprise, it occasioned a pause. But, after the most anxious deliberation, to me, it is clear intention written in capital letters, in the Act of 1794, and the explanatory Act of 1797,—that all who are not of the blood of the ancestor, from whom the estate came,, are excluded from the inheritance ; however remote in degree the descent may be, the lines in which the estate came, are preserved ad infinitum, and the .blood of the ancestor' runs through every clause of these Acts; consequently that the plaintiff is not entitled, and judgment must be entered for the defendants.
Tilghgman C. J. did not sit in this cause, being interested in the principle to be decided.
Judgment for the defendants.