PACKARD (SPRING v.). See Case No. 13,-260.

## Case No. 10,653.

### PACKER v. NIXON.

[9 Pet. 793, Append.]

Circuit Court, E. D. Pennsylvania. Dec. 26, 1833.[1]

DESCENT—HEIR AT LAW—STATUTES OF PENNSYLVANIA.

These extracts are inserted as showing the views of the court of the effect of the domicile of Matthias Aspden, the testator, in the construction of his will. See [Harrison v. Nixon] 9 Pet. [34 U. S.] 494.

BALDWIN, Circuit Justice. "The same principle is the rule in Pennsylvania, in all cases to which the common law had been applied by adoption; and it remains now the law of descent of both real and personal estate, if the provisions of an act of assembly do not in their words embrace the very case in controversy.

"This must be taken to be a point conclusively settled as the law of the state, by the authoritative decisions of the high court of errors and appeals in Johnson v. Haines, 4 Dall. [4 U. S.] 64, and of the supreme court in Cresoe v. Laidley, 2 Bin. 279, 284, and no longer open to discussion: That there is in this state such a person as an heir at common law, distinct from the statutory heir, to whom the real estate of a person dying seized and intestate, shall descend by the general course of the law in right of blood and inheritance; that the common law of both countries is the same, designating the same person, by the same rules and courses of descent, as the heir to an ancestor in all cases, and the heir to his estates of inheritance, unless in the particular event which has happened, an act of assembly has substituted some other person or persons to take the place of the ancestor; for its enjoyment and disposition, as a special law for the case, like to the law of custom, which breaks the course of descent according to the general course of the common law.

"This was the law of the province from its first settlement, it was expressly declared so by the eighth section of the act of 1705, and the heir was referred to as the heir in the abstract, according to the meaning of the word as given by Hobart. 'The said lands and tenements shall descend and come to the intestate's heir at law according to the course of the common law aforesaid.' 3 Smith's Laws, 153, 158, note; 1 Dall. Laws Appends. 45."

"That heir at law, or heir simply, does not mean heirs by custom in England, or statutory heirs in Pennsylvania, is the evident meaning of Judge Yeates. The observation of Chief Justice McKean in the same case (2 Yeates. 61; [Ruston v. Ruston] 2 Dall. [2 U. S.] 245): 'Thomas could not in this case be considered as heir at law in Pennsyl-

vania, where, if at that time a person died intestate leaving divers children, his real estate descended to all his children equally; the eldest son having only a double portion or share, and therefore the devise may even be considered a condition,'—draws us irresistibly to the same conclusion. The eldest son could not take as heir at law by the course of descent, in a case to which the act of assembly applied, and by superseding the common law established a special course of descent; but he could be and is, by the existing law, heir at law, in this state, according to the opinion of the court, delivered by the chief justice in Johnson v. Haines [supra], and of Judge Yeates, in Findlay v. Riddle [3 Bin. 139], in a case not embraced in any act of assembly, which accords precisely with the principle they laid down in Ruston v. Ruston [supra]. Taking these three cases in conjunction with Cresoe v. Laidley, they completely negative the proposition that there is any difference between an heir at law here and in England, except such as is made by custom or act of assembly. This becomes a negative, pregnant with important consequences as to the legal meaning of the word heir at law, that it not only is that which the common law gives it, but that it is not to be taken to refer to the customary or statutory heirs. 'The term heir at law conveys no idea; with us they are all his coheirs.' It is thus a term of contradistinction and of designation, denoting the person who has and can have no coheirs, the sole inheritor of the estate of the ancestor by right, in its nature necessarily exclusive. The law of both countries recognizes heirs as a class or a number of persons having equal rights by special law, and the heir as one person entitled by common law to the whole estate by right of blood alone. This necessarily follows from the opinions of the judges in Ruston v. Ruston, in accordance with the rule laid down in all the cases from Counden v. Clerke to Findlay v. Riddle, that customary or statutory heirs cannot take by a deed or devise to the heir at law, the heir, or right heir of the grantor or devisor, because they are different persons, claiming in different characters and capacities, and the words are incapable of substitution as convertible terms, without uprooting the whole course of descent, and every settled rule of inheritance and construction. Vide Gilb. Dev. 16, 162; 3 Salk. 336."

"In all the cases which have arisen on the construction of wills, the supreme court have given to the word heirs, in all the modes of expression, the same effect which they have by the common law, whether as a word of purchase or limitation, as conveying an estate for life, in fee, or in tail. Whenever it operates as a word of limitation, the estates descend to the heir at common law or in tail, as the case may be, and not the especial or statutory heirs according to the act of assembly, the operation of which is confined to cases where an intestate is seized in his own right, both at law and in equity, of an estate of inheritance, descendible to his heirs general."

"We do not deem it necessary to examine in detail the various cases which have been decided in this state on the subject of the descent of lands. The very accurate and valuable digest of Mr. Wharton furnishes, under the appropriate heads, a host of authorities, which fully establish the position of Judge Duncan in the case of Lyle v. Richards, 9 Serg. & R. 358.

" 'It is plain that from the date of the charter, until laws were made to alter the succession, lands descended according to the course of the common law; and not only descent, but enjoyment and purchase, including every other mode of acquisition, were governed by that law, acquired and lost by the course of the same common law.'

"Assuming it, then, to be the settled law of both countries, that the words heir, right heir, or heir at common law, without any qualifying or explanatory words, in a will, are to be taken as words of limitation, it remains to take a view of the cases in which they are words of purchase or a designation of the person to take by the will, as purchasers and not by descent. Fearne, Rem. 79a, 149, 158, etc."

"Whether, therefore, this case is to be decided by the law of England or of this state, the result must be the same as settling the law of the case, which we will now apply to the will in question."

"Nothing is left for presumption or construction in face of this solemn certificate and repeated declaration of intention. It negatives all belief that he meant to leave his estate to be disposed of by the will of anyone but himself, or that anyone was intended to be his heir but the one who was made so by the law in right of blood. Nor can we be convinced that it was his intention that while his will remained unaltered for 33 years, his own disposition of his estate should be subject to the changes in the law of the state from time to time.

"But, had this been in his mind, it would make no difference, for in 1824 he had no half brothers and sisters alive, and the act of 1797, making no provision for such case, his heir at law, his lawful heir by the common law of Pennsylvania, was John Aspden of Lancashire, England, who would have inherited his real estate, and his personal property would have been vested in the administrator appointed by the register, in trust for the next of kin, according to the law of England. The effect of his will is to leave the real estate to descend to his devisee, as if no will had been made, and as to the surplus to appoint an executor with directions to pay it over to the person whom by his will he had substituted as his benefi-

ciary, in place of his next of kin. This person was designated by a well known and understood term, which the law of both countries fastens on John Aspden, as indissolubly as if he had been especially described by name, birth, residence and occupation."

"From all these cases we are abundantly satisfied that the law of this case is definitely settled, both in England and this state, and we can have no hesitation in expressing our most decided opinion that John Aspden, the heir at law of the testator, is entitled to the whole of his estate by the fixed rules of law, which we are not at liberty to question."

[NOTE. A bill of review in this case was filed, but dismissed upon hearing. Case No. 11,-270. Subsequently, on appeal, the decree above was reversed by the supreme court. 9 Pet. (34 U. S.) 483. The case was again before the supreme court upon a certificate of division of opinion among the judges of the circuit court upon a matter of practice. The supreme court decided the matter not properly the subject of such certificate. 10 Pet. (35 U. S.) 408. The whole subject of Matthias Aspden's estate was again before the court upon the question of the interest of the devisees under the will. Case No. 589.]