HARRIS and another administrators of JAMES HAR-
RIS *against* HAYES and another administrators of
·ROBERT HARRIS.

IN ERROR.

*1814.*

Lancaster,
Saturday,
May 28.

*A.* being seized
of real and per-
sonal estate which
had come to him
from his deceased
father, dies intes-
tate without issue,
leaving a *mother*
and brothers and
sisters of the
whole blood.
*Held,* that the
estate is to go to
the brothers and
sisters, as if the
mother were
dead.
It must be per-
fectly clear that
an arbitration has
been entered into
under the act of
21st *March* 1806,
or this Court will
not reverse the
proceeding, be-
cause the provi-
sions of that act
have not been
complied with.

THIS was an amicable action on the case in the Com-
mon Pleas of *Dauphin,* by the administrators of *Robert
Harris* the plaintiffs below, against the administrators of
*James Harris.* In *February* 1812, by agreement of attornies
in open court, all matters in variance between the parties in
the cause were referred to three persons, or any two of them,
*ex parte* on ten days notice. On the 29th *January* 1813, the
referees made a report in favour of the plaintiffs, which was
filed on the 2d *February* following, read, and judgment
*Nisi.* On the 5th *February* the defendants filed exceptions,
which the Court afterwards overruled, and the defendants
took this writ of error. With the record came up the de-
positions of the referees, that the reference was admitted
before them to be a reference at common law, and therefore
they were not sworn.

The case below, so far as it is material, was thus: *James
Harris* the defendants' intestate, died seized and possessed of
real and personal estate, leaving a widow and eight children.
*Laird Harris* the oldest son, died after him, and after *April*
1797, of full age, intestate and without issue, leaving a mo-
ther and seven brothers and sisters. The administrators of
*Robert Harris* one of the brothers, claimed one seventh of
two thirds of the estate of *James Harris,* upon the ground
that all *Laird Harris's* proportion went to the surviving
brothers and sisters as if his mother were dead; and the de-
fendants resisted it upon the ground that this was a *casus
omissus* in the intestate law. The referees reported in favour
of the plaintiffs' claim, and the only material exception rela-
ted to this point of law.

In this Court several errors were assigned, but only two
pressed. 1. That the arbitration had taken place under the
act of 21st *March* 1806, by the third section of which the
plaintiffs were bound to serve a copy of the award upon the
defendants within ten days after the expiration of the term

at which the report had been filed; and that this had not been done. 2. That the present case was not provided for by any act of assembly, and therefore of *Laird Harris's* part of his father's personal estate, his mother took a portion, or the whole.

*Laird* argued for the plaintiffs in error.

*Elder* contra.

TILGHMAN C. J. This is an amicable action entered on the docket by consent, and submitted to arbitrators. Many exceptions have been taken to the proceedings of the court below, all of which have been abandoned but two. 1st. That the judgment was not in conformity to the act of 21st *March* 1806, under which the defendants contend the suit was arbitrated. 2d. That the Court erred in their opinion as to the share to which *James Harris* was entitled, of the real and personal estate of *Robert Harris* deceased.

1. As to the first error assigned, it appears to me on a careful inspection of the record, that the arbitration was not under the act of 21st of *March* 1806, but the old act of 1705, which remained unrepealed. From the words of the submission the case might fall under the provision of either of these acts; but the defendant having filed exceptions to the award within four days from the commencement of the term to which it was returned, it would seem that the proceedings were understood by the parties to be under the act of 1705. At all events it is by no means clear, that they were not under that act, which it ought to be before the Court would reverse the judgment for that cause, because it is an objection which does not go to the merits of the cause. I am therefore of opinion that there is no error in this part of the record.

2. On the second point the case stands thus. A man of full age, entitled to real and personal estate, all of which came to him from his deceased father, dies intestate and without issue, leaving a mother and brothers and sisters of the whole blood. The plaintiffs contend that his estate shall be equally divided between the brothers and sisters in exclusion of the mother. The defendants say that it is a *casus omissus*, unprovided for by any act of assembly. It will depend on

the construction of the acts of 19th *April* 1794, *section* 7, and of 4th *April* 1797, *section* 5. By the act of *April* 1794, it is provided that in case a person shall die seized or possessed of real or personal estate which came to him from the part of his father, leaving no widow, nor lawful issue, nor father, but a mother, the said estate shall descend, pass, and be enjoyed or possessed, *as if such person had survived his mother*. In such case then it was the clear intent to exclude the mother from any share of her child's property; and the reason was that she had already been sufficiently provided for from her husband's estate. But it is argued, that although the mother be excluded, yet it is not said who shall take, because the case put in the act does not suppose that the intestate left brothers or sisters. Granting for argument's sake this to be the case, we must consider the act of 1797, which was made for the express purpose of providing for the omissions of the act of 1794. By the 5th *section* of the act of 1797, " When any person shall die " seized or possessed of real or personal estate, leaving nei- " ther widow nor lawful issue, father or mother, but bro- " thers and sisters of the whole blood, the estate shall " descend to and be vested in such brothers or sisters as te- " nants in common in equal parts." Now the mother being considered as dead by the act of 1794, the case falls direct- ly within the act of 1797. The Court below was right there- fore in adjudging that the estate was to be equally divided between the brothers and sisters in exclusion of the mother. I am of opinion upon the whole that the judgment should be affirmed.

YEATES J. The plaintiffs in error have insisted, that it does not appear they were duly notified of the award of the referees according to the provisions of the *Arbitration act of* 21st *March* 1806; to which it is properly answered, that the terms of the submission equally apply to the old *Defal- cation act of* 1705, and pursue the usual forms under that law. At best it is equivocal, but the conduct of the plaintiffs in error removes all doubt upon that question. The deposi- tions of the referees taken in open court, which have come up with the record, prove that it was admitted before them to be a reference at common law, and on this ground they

were not sworn. Besides, the plaintiffs' counsel have treated it as a reference under the defalcation act; they have filed their exceptions within the four days, and argued them before the Court. Upon this point therefore they cannot now prevail.

But a more serious objection has been urged, that it appears by the statement below, that the now defendants claimed a sum to which they were not entitled; viz. one-seventh of two-third parts of the personal estate of *James Harris* senior deceased, and the like proportion of the rents and profits of his lands after his death; and this necessarily leads to a consideration of the law on that subject. *Laird Harris* the eldest son, died after 1797, and after his father, of full age, intestate, unmarried, and without issue, leaving a mother and seven brothers and sisters; and the question comes to this, whether his mother is entitled to any part of his real or personal estate derived under his father.

Under the *English* statute of *distributions* of 22*d* and 23*d Car.* 2. *c.* 10, and *before* the statute of 1 *Jac.* 2. *c.* 17, a child dying intestate, without wife, children or father, the mother took the whole personal estate in exclusion of the brothers and sisters. 1 *Wms.* 48., 1 *Salk.* 251. This was altered by statute, 1 *Jac.* 2. *c.* 17, and the resolutions under it have been, that where a child has died intestate, without issue, leaving no father, but a mother, wife and brother, the wife took half of the personal estate, and the remainder was divided amongst the brothers and mother; and this too notwithstanding the statute says, dying intestate without *wife* or children. 2 *Wms.* 344., 1 *Stra.* 710., *Gilb. Equ. Rep.* 190., 1 *Atk.* 457. This statute not extending to *Pennsylvania*, a provision of the like nature was made by the act of assembly, 22 *Geo.* 2., passed *February* 4*th* 1748, 9, as to the personal estate, where such child died in his *minority*. By a subsequent law of 4 *Geo.* 3., passed 23*d May* 1764, the same provision is made, whether the child died of full age or in his or her minority; but as to his land it goes to his brothers and sisters, provided he dies in his minority, *and not otherwise*. The legislature here went upon the principle, that the brother dying of full age might devise his lands as he thought proper; but in such instance did not think proper

1814.

HARRIS
et al.
*v.*
HAYES
et al.

to take away the right of the eldest brother, as heir at common law.

I have made these observations to mark the progress of the law on this subject at different periods. But all former acts as to descents are repealed by the 25th section of the act of 19th *April* 1794. 3 *Smith's Laws* 153. The seventh section of that law embraces this case precisely. One dying leaving no widow nor lawful issue, nor father but a mother, the mother shall hold the real estate during life, and the personal estate shall be vested in her absolutely, *unless the said real and personal estates, or either of them, came to the person so dying seized or possessed, from the part of his or her father;* in which case the estate shall go as if such person had *survived his or her mother.* The act excludes the mother in direct terms, under the circumstances of this case, from all participation in either the real or personal property of her son *Laird Harris,* who died intestate and deriving it under his father *James Harris.* The policy of this provision was undoubtedly founded on the principle, that where the mother has taken her full thirds of the lands of her husband during life, and of the personal property absolutely, she ought to have no further claims on his estate. The act is silent as to the manner in which the estate shall go, and bars the mother only. This is provided for by section fifth of the act of 4th *April* 1797, 3 *Sm. Laws* 298, which directs that it shall descend to and be vested in the brothers and sisters of the whole blood, as tenants in common in equal parts. It is admitted that the said *Laird Harris* died after the passage of this last act, and it hence follows irresistibly, that the defendants in error as the personal representatives of *Robert Harris,* supported their claim before the referees, and of course that the second error assigned by the now plaintiff also fails them. I am therefore of opinion, that the judgment of the Court of Common Pleas of *Dauphin* county be affirmed.

BRACKENRIDGE J. concurred.

Judgment affirmed.