MASSEY *against* THOMAS.

IN ERROR.

I N Error to the Common Pleas of *Chester*, the case was as follows:

*Samuel Thomas* the plaintiff below, entered into an agreement with *James Massey* in the following terms: " Amica- " ble action of ejectment in the Common Pleas of *Chester* " county. All matters in variance and controversy between " the parties *respecting a boundary line between them*, re- " ferred to (seven persons) who, or any four to decide; and " the said parties request the prothonotary to grant an order " accordingly."

The agreement was dated the 11th of *August* 1809, and filed on the next day; and on the 9th of *September*, six of the referees made an award. " The referees having met and " been qualified &c., we find in favour of the plaintiff " *Samuel Thomas*, by running a line, beginning at a beach on " the west side of *Crumb* creek, now marked by us for a " corner, standing near the place where a chesnut formerly " stood; thence extending south 63 degrees west 243 per- " ches to a stone, set in the ground by us for a corner, in " or near where the line dividing the lands of *James* and " *Levi Massey* intersects the same."

Exceptions were filed below by the defendant, which the Court overruled, confirmed the award, and entered judgment for the plaintiff.

*Frazer* and *Tilghman* for the plaintiff in error.

1. There was no regular institution of a suit. The agreement supposes that an action was depending, but does not authorize the entry of one. There ought to have been a writ, because the twelfth section of the act of 21st *March* 1806, 4 *Sm. Laws* 332, says that all writs of ejectment shall be in a form there given, and *not otherwise;* and the next section enacts, that where any thing is directed to be done by act of assembly, it shall not be done according to the provisions of the common law.

2. There was no description of the land in dispute, no

---

1814.

*Philadelphia, Monday,* July 25.

An agreement for an amicable action of ejectment, contained on the same paper a submission to reference, and a request to the prothonotary to issue the rule; under which rule the referees were then sworn, and made their award. *Held* good under the act of *March* 1806, without proof of the agreement by a subscribing witness.

An amicable action of ejectment is good, although the act prescribes the form of the writ of ejectment, and says it shall not be otherwise.

Where the proceedings are by arbitration, neither declaration nor pleadings are necessary.

The parties having in an action of ejectment referred a dispute about boundary, an award " in fa- " vour of the " plaintiff by run- " ning a line" particularly described, is good, and is in effect an award to the plaintiff of the land in dispute up to the dividing line.

declaration filed, no statement, nothing by which the matter in controversy could be precisely ascertained. The twelfth section of the act requires that a description should be filed. The situation, boundaries, and quantity of the land should appear on record, with an averment that the defendant is in possession, and that the plaintiff has title; otherwise the substance of the act is not complied with.

3. There is nothing in the submission and award upon which judgment could legally be rendered. The plaintiff does not merely state his title in a defective manner, but he states no title at all; 3 *Bl. Com.* 395; and the award finds nothing in certainty for the plaintiff, because a single line includes nothing, and it is not even said on which side of it the respective parties shall hold. It is neither certain nor final. *Grier* v. *Grier (a)*, 5 *Rep.* 121 a. 35 a.

4. The proceeding was under the act of 1806, because the arbitrators were sworn. When the reference was entered, no suit was pending; and in such case, the first section of the act requires that the agreement shall be proved by the oath of a subscribing witness, before the award can be entered upon the record. This was omitted here.

*Kittera* and *Sergeant* for the defendant in error.

1. The agreement of the parties was itself the institution of a suit in conformity with an ancient practice in this state; and ejectments as well as other actions may be instituted that way. The act of assembly intended merely to destroy the fiction in ejectment, and applies only to cases where a writ or adversary process is used. It did not mean to interfere with the practice of entering amicable actions, because in the second section it recognizes them.

2. Descriptions, and declarations are also for cases in which a writ is issued; not for a case of amicable suit and reference, where the defendant wanted no description, because by the agreement he shewed his knowledge of the subject in dispute.

3. As to certainty, by a reasonable interpretation of the award, it will appear that there is enough for the judgment. The dispute was about boundary, and of course between

(a) 1 *Dall.* 174.

1814.

MASSEY
v.
THOMAS.

the adjoining lands of the parties. To find for the plaintiff by running a certain line, is therefore to find for him the land adjoining his other land up to that line. There is as much certainty in this, and more, than in the old form of ejectment, where any quantity might be declared for, and any less quantity recovered, and where the plaintiff always took possession at his peril. *Cottingham* v. *King* (a), *Kildare* v. *Fisher* (b), *Jonnes* v. *Hoel* (c), *Conner* v. *Heath* (d), *Gardiner* v. *Bridge Co.* (e). In fact the judgment in this case is a mere confirmation of the award; and if strictly there is not enough for a judgment, there is for a proceeding by attachment to enforce performance, by which the Court can perfectly execute the intention of the referees. *Kunkle* v. *Kunkle* (f), 1 *Saund.* 317., *Davies* v. *Doe* (g).

4. The proceeding was under the act of 1705, and the oath of the referees was surplusage. But if under the act of 1806, the action was entered before the agreement of reference was consummate, because the prothonotary was requested to make out the order. The first section of that act, only applies to cases in which there is a reference and award, before the agreement is filed.

TILGHMAN C. J. The first question that occurs, is under what act of assembly the reference in this case was entered. If necessary it might be supported under the old act of 1705. But it appears to me, that the parties considered it as being under the act of *March* 1806, " to regulate arbitrations, and "proceedings in courts of justice," because the arbitrators were sworn, which is not required by the act of 1705. And I think the entry may be maintained under the second section of the act of *March* 1806. By that section, it is enacted, that " in all cases where an amicable suit is, or may be en- " tered in the prothonotary's office, the plaintiff and defen- " dant may either in vacation or term time, by themselves, " their agents or attornies, consent to a rule of court, for " referring their cause to certain persons, to be by them mu- "tually chosen." Now this is exactly what the parties did. But it is objected, that when the rule of reference was taken

(a) 1 *Burr.* 623.　　(d) 5 *Burr.* 2673.　　(f) 1 *Dall.* 364.
(b) 1 *Stra.* 71.　　(e) 2 *Binn.* 450.　　(g) 2 *W. Black.* 892.
(c) *Cro. Eliz.* 235.

out, there was no action depending. That is begging the question. The same paper which contained the agreement to refer, contained also an agreement to enter an amicable action. Each must go in its order. The action is entered first, then follows the reference. This is so simple, so natural, so agreeable to the intent of the parties and the intent of the law, that I cannot consider it as at all doubtful. If the agreement had not been carried to the prothonotary till after the making of the award, the case would have been different, and would have fallen within the first section of the act. In that case it would have been necessary to prove the agreement by a subscribing witness; but it was carried by the parties themselves, and delivered to the prothonotary as the foundation of the proceedings. Having ascertained the act under which the proceedings were had, I will consider the objections to the proceedings themselves.

It is said, first that the action could not be instituted without a writ in the form prescribed by the twelfth section of the same act, 21st *March* 1806, by which it is declared, that " all writs of ejectment shall be in the form following " &c." But this is to be understood as applicable only to cases in which the suit is commenced by writ, and by no means as impairing the force of the first and second sections, by which all persons are permitted to enter suits without writs. The objects of this act are very different; one relates to arbitrations, the other to proceedings in court without arbitration, and it is the manifest intent of the act to encourage arbitrations.

The second objection is that there is no declaration or description of the property demanded by the plaintiff. It has been more than once determined by this Court, that when the proceeding is by way of arbitration, neither declaration nor pleadings are necessary. We see the inconvenience very plainly. But such is the system establishsd by the legislature, and such it must remain until altered by a competent authority.

The last and most serious objection is, that the award is so uncertain that no judgment can be entered upon it. It is in these words, " we find for the plaintiff by running a line " beginning &c." The line is well described, but the difficulty is, that one line comprehends no space. It is the duty of the Court to support the award, if they can, because the

case has been decided on its merits, and the objection is
to form. From the agreement of the parties and the award
itself, we understand that the plaintiff and defendant held
adjoining lands. Then the dividing boundary being fixed, the
meaning of the award is, that the plaintiff is to have the land
up to the dividing line and adjoining his other land. *Certum
est quod certum reddi potest.* The quantity may be ascertain-
ed by measurement. The plaintiff must take possession at
his peril. If he takes land not included in the award, the
Court will do justice on a summary enquiry. In very few
declarations in ejectment is there any actual certainty. The
plaintiff demands so many acres of land, so much pasture,
so much wood, and situate in *a certain county.* But until it
is shewn, no person could discover it from this description;
and when it is shewn, it is of no manner of consequence
whether the quantity accords with the declaration or not,
provided it does not *exceed it.* Yet that is held good enough.
In fact it is so uncertain, that the sheriff has a right to de-
mand an indemnity before he delivers the possession; for
he trusts to the plaintiff's shewing, not being able to make
any thing out of the record. I am therefore induced to sup-
port the judgment entered on this award. If the defendant
should think himself injured by the possession taken by the
plaintiff, he may apply to the Court for speedy redress.

YEATES J. It cannot be denied that it was the intention
of the parties to settle a disputed line by judges of their
own choosing. The meaning of their agreement plainly was,
that an amicable action should be entered in ejectment, and
their respective rights be decided by the persons they had
nominated. It does not plainly appear that the parties in-
tended this reference should take place under the act of
21st *March* 1806, although the referees seem to have so
considered it, by being qualified and returning their report
under seal. But if it be necessary in order to effectuate the
agreement, that it should be considered as having taken
place under the practice which has obtained under the *old
defalcation act of* 1705, the Court will so consider it, *ut res
magis valeat quam pereat.*

The entry of an action of ejectment presupposes a claim
of lands by the plaintiff in the possession of defendant. The

1814.

MASSEY
v.
THOMAS.

former recovers only such part as he can shew title to. By such entry of an amicable action, the defendant waives the necessity of issuing a writ, and of course every thing contained in it. I cannot suppose that the legislature meant to prevent parties appearing without previous process. An early determination of the controversy seems to have been a favourite object.

A controversy *respecting the boundary line between two persons* necessarily implies that their lands adjoin; consequently when the true division line is fixed, the parties respectively must recede from their former possession, or advance in their possession up to such line. The juxta position of their other lands readily determines on which side of the line their several lands lie. I think the award therefore sufficiently certain in ascertaining the boundary according to the submission. If the plaintiff below should take possession of land not found for him, the Court will interpose in a summary way, and grant the defendant below relief. I am of opinion, the judgment of the Common Pleas should be affirmed.

BRACKENRIDGE J. concurred.

Judgment affirmed.