## Ross *against* Barker.

If a rule of court requires depositions, when taken, to be filed within a reasonable time, and it appears that when a deposition was taken it was filed, but afterwards taken out of the office and had been out for several years before the trial, the court should not permit it to be read in evidence.

A beneficial owner of land may maintain ejectment in the name of a nominal warrantee, ignorant both of the action and the trust, no more being required than to disclose the name of the actual party.

The possession of an actual settler who has omitted to mark out his boundaries by competent authority, cannot be constructively extended beyond his immediate occupancy. And this principle is peculiarly applicable to a settler under the act of 1792, who might have a survey without a warrant, and who cannot recover the possession without it.

An actual settler who enters upon land north and west of the Ohio and Alleghany rivers and Conewango creek, within two years after the date of a warrant which had been granted to another, shall not gain an advantage by his wrong; his prevention of performance by the warrantee, is a dispensation with it; and his actual settlement and improvement enures to the benefit of him who has the warrant and survey.

The entry of a warrantee to perform the condition of settlement as required by the act of 3d April 1792, was congeable till the expiration of two years from the ratification of the treaty of Grenville.

A verdict for the plaintiff, in ejectment, except "eight acres to be laid off as follows: beginning at the Black oak or factory corner, thence down the creek so far as to include the house and stable, thence westwardly so far as to include eight acres by running north to the east and west line of said tract, thence east along said line to the place of beginning" is sufficiently certain.

ERROR to *Beaver* county.

This was an action of ejectment by William Barker against Samuel Ross and others.

The plaintiff gave in evidence a warrant dated the 3d of April 1792, in the name of William Barker, and another of the same date

[Ross v. Barker.]

in the name of Joseph Williams adjoining, which were executed and surveys made in 1794.

The defendants relied upon an application of William Williams, dated the 21st of May 1804, for a vacating warrant for 400 acres, containing parts of the above warranted tracts; also an application dated the 28th of January 1807, stating that Williams had sold to Ross & Jackson, and requiring the warrant to issue in their names. They then gave in evidence, a warrant for the land in dispute to Ross and Jackson, dated the 6th of April 1807, interest from the 1st of November 1792; a survey in pursuance thereof and a patent dated the 19th of February 1811. Defendants then proved that William Williams had built a house on the land, in 1796, and then had five or six acres cleared, and raised grain and lived there until the 13th of October 1806, when he sold to Ross & Jackson, who then went into possession and continued until the 29th of October 1817, when they were dispossessed by the marshal, by a writ of *hab. fac. poss.* The defendant also alleged that Williams had commenced his improvement in November 1792. After Ross and Jackson were dispossessed they brought an ejectment against John Henry and others, claiming under the present plaintiff's title, and recovered a verdict and judgment, and obtained the possession and sold to the present defendants.

The defendants called several witnesses, who had resided near to and knew the land forty years, to prove that they never knew or heard of such a man as the present plaintiff, William Barker.

The defendant also offered in evidence a deposition which had been taken in the ejectment by Ross and Jackson against Henry and others, for the same land at the time it was pending. The plaintiff objected to it on the ground, that it had not been filed in the office for many years, as required by a rule of court: and on this ground the court rejected it and the defendant excepted.

The jury found a verdict for the plaintiff, except eight acres, to be laid off as follows; " beginning at the Black oak or factory corner, thence down the creek so far as as to include the house and stable, thence westwardly so far as to include eight acres, by running north to the east and west line of said tract, thence east along said line to the place of beginning."

The following points submitted by the defendant's counsel to the court, exhibit the different questions of law raised and argued.

1. That if they believed the testimony of the several witnesses in relation to the existence or non-existence of the plaintiff, William Barker; the presumption of law is, that he either never existed or is dead, and that in either case the action cannot be sustained.

2. That if the jury believe that William Williams commenced his settlement in 1792, in November, with the intention of perfecting the same, and that it was followed up by his improvement and residence in February 1796, and that he paid interest to the state

[Ross v. Barker.]

from the 1st of November 1792, and that his application was for parts of two tracts and that the settlements were made upon the tracts appears, for there has been no abandonment in law of his first settlement, and the plaintiff cannot recover.

3. The plaintiff must recover on the strength of his own title and not upon the weakness of the defendant's. The plaintiff cannot recover any portion of the land lying within the alleged survey of Joseph Williams.

4. That if the settlements were made prior to plaintiff's survey, in 1794, plaintiff cannot recover.

5. Unless the plaintiff has complied with the requisitions of the act of 1792, he cannot recover. Unless plaintiff has done so within two years after the treaty of Fort Grenville, plaintiff cannot recover. The fact of Williams being in possession is no excuse.

6. That the act of the 14th of March 1814, relates to the act of 1792, and unless plaintiff has proved that within two years from the date of the warrant he went upon the land or attempted to do so, and that he was prevented by the enemies of the United States, and that he persisted for two years, and circumstantially proves what attempts were made and acts of persistence, or that plaintiff has, within two years from the date of the same act of 1814, tendered a deed to defendants for 150 acres, including his improvement, that the plaintiff cannot recover.

7. That the plaintiff must have made an actual survey on the ground, and that in order to constitute such survey the extreme lines of the tracts claimed must have been run and marked. If the plaintiff relies on the depreciation surveys, they must prove the same were adopted and conform to the survey of plaintiff returned.

8. That the settlement of William Williams is an incipient title and affords that kind of colour of title, which, if held adversely for twenty-one years, protects defendants in their possession, coextensive with the claim of the settlement.

9. That if the jury believe the defendants or those under whom their claim is, held the tract of land in controversy adversely for twenty-one years, their actual improvements and enclosures are protected by the statute of limitations.

10. That plaintiff's warrant is a shifted one, and does not attach to the soil until the return and acceptance of the same at the land office.

The answers of the court (Bredin, President) to these points, were in accordance with the law, as ultimately decided by this court, and need not be more particularly stated.

The cause was argued at October term 1835, by

*Watts* and *Biddle*, for plaintiff in error, and held under advisement; and the court ordered a reargument at this term, and the same was again argued by

v.—2 z.

[Ross v. Barker.]

*Watts*, for the plaintiff in error.

*Fetterman* and *Forward*, for defendants in error.

The opinion of the Court was delivered by

Gibson, C. J.—The rejection of the depositions has not been a subject of particular reliance; nor does there seem to be colour for the exceptions to which it gave birth. It was not explicitly shown, as it ought to have been, that the depositions were taken in a conflict between the same titles. One of the defendants in the former ejectment was in possession under a stranger, whose title does not appear; and, as no defence was made at the trial, he and the other defendants may have been naked intruders. Nor was there competent proof of the filing required by the rule of court. All was parol; and it but appeared that it was the practice, a monstrous one to be sure, to make no memorandum of the filing; and that though the depositions had been put into the office, they had been taken away and brought back again by one of the defendants, after a lapse of thirteen or fourteen years. What may have happened to them in this interval of surreptitious custody—probably nothing, but possibly a great deal—cannot certainly be told; and, to say nothing of the incongruity of verbal proof of an office transaction, it is abundantly clear they were not filed within the meaning of the rule, or in the keeping prescribed by it.

The point raised by the second assignment of error is disposed of by the decision in Campbell *v.* Galbraith, 1 *Watts* 78, that the beneficial owner may maintain ejectment in the name of a nominal warrantee, ignorant both of the action and the trust, no more being required than to disclose the name of the actual party. The negative presumption attempted, from the fact that certain of the defendant's witnesses had not heard of the legal plaintiff, would enable a party to prove the death or non-entity of any person whatever, as nothing would be easier than to find those who had not heard of him.

It is unnecessary to recapitulate the decisions on the statute of limitations; for if there is any thing definitely settled, it is, that the possession of a settler who has omitted to mark out his boundaries by competent authority cannot be constructively extended beyond his immediate occupancy. And this principle is peculiarly appropriate to a settler under the act of 1792, who might have had a survey without a warrant, and who cannot recover the possession without it. What, then, was the defendant's case? The settler under whom they claim began his residence in 1796, and his immediate successors obtained their vacating warrant and survey in 1807, before which they had no constructive possession of any land in particular; but having then gained a constructive possession of all included by their survey, it continued till 1817, a period of bare ten years, when they were evicted by process. It is obvious they did not gain a colourable title to the plaintiff's survey, for they

claimed in hostility to it; and this differs their case from that of M'Call *v.* Neely, 3 *Watts* 69, where the occupants had entered as proprietors of the whole, and had paid the taxes for it. The settler, here, made pretension to no tract in particular; and his successors had their warrant laid on parts of two adjoining surveys. Had the settler procured a survey on his settlement alone, as he might have done by virtue of the eighth section of the act of 1792, the intervening lapse of time would have protected it; but his negligence disables his successors from retaining more than was in actual possession. They are consequently driven to a defence on the act of 1814, which, to avail them, must be not only constitutional but applicable to their case.

In performing the condition of settlement imposed by the act of 1792, the warrantees were exposed to resistance from a quarter not anticipated. The instances in which their lands were pre-occupied by settlers regardless of their rights are innumerable. In this predicament, to have attempted to enter, would have produced violence and the shedding of blood. It was justly said in Jones *v.* Anderson, 4 *Yeates* 375, that it would show but little knowledge of the spirit of the contest, to suppose that an actual settler would have yielded to the remonstrances of a warrantee; and that so far from requiring the latter to proceed till he was actually resisted, the mild spirit of the law invites not to adventures which tend to a breach of the peace. These cases were not provided for. The proviso in the ninth section explicitly regards prevention by the public enemy. "If any such actual settler, or any grantee in any such original or succeeding warrant, shall, *by force of arms of the enemies of the United States*, be prevented from making such actual settlement, or be driven therefrom, and shall persist in his endeavours to make such actual settlement as aforesaid, then, in either case, he and his heirs shall be entitled to have and to hold the said land in the same manner as if the actual settlement had been made and continued." Upon the happening, therefore, of the unforeseen contingency of prevention by actual settlers, while the warrant was in admitted force, the courts were compelled to dispose of it as they were persuaded the legislature would have done. They declared, in accordance with the purest ethics and the maxims of the common law, that the settler should not gain an advantage by his wrong: and that his prevention of performance was a dispensation with it. Such was the construction in the Attorney-general *v.* The Grantees, 4 *Dall.* 242; Buchanan *v.* Myer, 3 *Yeates* 586; Patterson *v.* Cochran, 1 *Binn.* 231, and Jones *v.* Anderson already quoted. Now, the settled construction of a statute is a part of it; and when it has become a rule of property, as this undoubtedly has, is no more to be disturbed than the express enactments of the statute itself. Beside prevention by the public enemy, then, there was, at the passing of the act of 1814, another available justification for non-performance of the condition of settlement; and how far did the legislature intend to deprive the

[Ross v. Barker.]

warrantee of it? That act declares that he shall not recover without proof that he, or some one for him, " did, within two years from the date of the warrant, go on the land so claimed, or attempt to go; and that he, or such person, was individually prevented *by the enemies of the United States* from settling said land; and that he, or such person, did persist two years, from the date of the warrant, to settle and improve the same, or cause the same to be done; and show circumstantially what attempts and what acts of persistence were made : or that he has made, or caused to be made, such settlement, residence and improvement as is required by the act of 1792, and within the time therein specified." The object of this was to hold the warrantee to strict proof of actual prevention by the enemies of the United States, where that is the point of defence ; and the clause is certainly not *prima facie* applicable to prevention by the wrongful occupancy of him who alleges the want of performance. It is said his case is embraced by the clause which says that the specified proof shall be made " before *any* person claiming land north and west of the rivers Ohio and Alleghany, and Conewango creek, shall recover against an actual settler." A literal application of the text would bar even the owner of a donation tract who was bound to make no settlement at all, and that was certainly no part of the design. But take the case of a warrantee bound to make a settlement within two years from the date of the warrant, who has been prevented by the intrusion of a wrongdoer in a time of profound peace. If superadded proof of prevention by the public enemy were exacted, he could not recover at all, for he could not prove a settlement, because he was prevented from making it by the party putting his defence on the want of it; and he could not prove that he was prevented by a public enemy, because there was none. If the disseisin of such a settler were protected, the rights of the parties would be referred, in the first instance, to the arbitration of force. In Bedford *v.* Shilling, 4 *Serg. & Rawle* 410, the act was deemed inapplicable to *actions* pending in order to protect the warrantee from costs incurred in the prosecution of an undoubted right; but it would be fraught with still more startling injustice to apply it so as to require impossible proof of conditions which were no part of the title. Beside, a law requiring the performance of any such condition would be a direct infraction of the constitutional provision which guards the sanctity of contracts; and a construction in favour of an admitted wrongdoer, therefore, cannot be admitted. Nor would it, in this instance, accord with the actual design. Indeed, the reverse is indicated by the letter; for it requires no ingenuity to show the settlement of the intruder to be the settlement of the warrantee, and as such, performance of the condition; for, as it must have been indifferent to the state whether it were performed by the settler or the warrantee, it will not be pretended that she might have issued a vacating warrant to a third person; and as the title of the intruder would be out of the question, the warrant and settlement would hold the land of course. The case

would be analogous, in principle, to that of a patent purchased by one who had not the title, which enures to the benefit of him who has, insomuch as to make a second patent unnecessary, as was held in M'Coy *v.* Work, 5 *Binn.* 157; Duer *v.* Boyd, 1 *Serg. & Rawle* 203, and Gonzalies *v.* Hoover, 6 *Ibid.* 118. It may be said the words of the act require the warrantee to have made the settlement in person, or to have "caused it to be done;" and that there is no privity between him and the settler. The meaning plainly is, that it shall have been made by the settler or some one in his stead; and it is clear that equity would turn the wrongful settler into a trustee. The true construction therefore is, that the protection of the act may not be invoked by him who did not enter after the warrantee had made default.

Still the letter requires proof of settlement within two years from the date of the warrant; and here the settler entered at a period more remote, though still within two years from the ratification of the treaty of pacification. The words, however, are the same as those of the act of 1792; and are to receive the same construction. That it was not originally a sound one, might be easily maintained; yet the state ought to be the last to complain of it. No *lawyer* can withhold his acquiescence from the conclusion of the supreme court of the United States in Huidekoper *v.* Douglass, 3 *Cranch* 1, that the condition was gone by the continuance of hostilities during the time limited for its performance. But our own court, borrowing the arbitrary doctrine of *cy pres* from the statutory jurisdiction of chancery over a peculiar subject, engrafted on the contract a *legal* condition of settlement after the pacification which had not been in the contemplation of any one. Equity may, perhaps, relieve *against* a condition under very peculiar circumstances, as in the case of a forfeiture for non-payment of rent, the clause of re-entry being in the nature of a penalty; but it is incompetent to enlarge the measure of performance, or impose a new one. The case of Norton *v.* Rouse, 1 *Binn.* 460, and the anonymous case in 2 *Ch. Ca.* 19, the only ones in which a chancellor ever presumed to add to a contract, are generally given up as indefensible. But in England, the power of controlling a gift to a superstitious use so as to appoint it to a use incontestably charitable, which is the archetype of the doctrine of *cy pres* as applied to the act of 1792, is vested in the crown, or, in other words, the chancellor, by the statutes 1 H. 6, c. 14; 15 R. 2, c. 5; 23 H. 8, c. 10, and 37 H. 8, c. 4, which, were they in force here, would not authorise the judges to interpolate a condition unconnected with the use. But such as it was, the state had the benefit of it; and an objection to it now, would come with a bad grace from her or those who claim by her title. It must, therefore, be taken for the established and rightful construction, that the entry of the warrantee to perform the condition of settlement, was congeable till the expiration of two years from the ratification of the treaty. Such, then, being the contract, it would be an infringement of it

[Ross v. Barker.]

palpably within the constitutional prohibition, to legalise the entry of a settler within that period, a consequence to be avoided.   The case of the defendants, therefore, stands on no better foundation than if the settler had entered within two years from the date of the warrant: and the provisions of the act of 1814, are plainly inapplicable to it.

The exception to the verdict is equally untenable.   The purpose of the jury was to except, from the recovery, a part of the land protected by the statute of limitations; to effect which they designated it by natural marks and geometrical lines.   What more could be done by men who had not explored the ground with a surveyor? They found for the plaintiff the land contained in his survey except " eight acres to be laid off as follows: beginning at the black oak or factory corner, thence down the creek so far as to include the house and stable, thence *westwardly* so far as to include eight acres by running north to the east and west line of said tract, thence east along said line to the place of beginning."   Now, had the word west been used for westwardly, even mathematical precision would have been attainable from this description; but less than mathematical precision is sufficient.   In Massey *v.* Thomas, 6 *Binn.* 333, an award in ejectment finding a line between two given points was certain enough, though a single line includes nothing.   There, it may be said, the course was precisely fixed; and that the word westwardly means no more here than tending to the west. Yet we must, of necessity, have regard to the common parlance of jurors suddenly called to act in these matters, and without assistance.   They meant to except the improved land which had been all along in actual possession; and though they doubtless had a competent notion of the general bearings of its boundaries, they could not, without a previous survey, have designated them with extreme precision.   Keeping their object in view, a surveyor would have no difficulty in laying off the excepted land; and as the verdict may be thus executed, it is certain enough.

Judgment affirmed.