## McAdams' Executors *versus* Stilwell.

It is not necessary to call all of the subscribing witnesses to an instrument of writing, to prove its execution.

Where there is a rule of court requiring that a plea of *non est factum* be verified by affidavit, such affidavit must be made.

A father or guardian who executes an indenture of apprenticeship, under our statute, in evidence of his assent, is not bound for the performance of its covenants. These are considered as the undertakings of the apprentice.

Where the death of a defendant is suggested, after judgment on the verdict, it will furnish no ground for interfering with the verdict.

Where a rule of court requires exceptions to be taken to the charge of the court, before the verdict is received; where this is not done, exceptions to it will not be reviewed on error.

Where a witness since deceased, was examined before referees, whose award was afterwards erroneously set aside by the court, and his testimony, offered to be proved from notes thereof, taken by counsel, was rejected, because the award had been set aside, on the ground that the court considered the appointment of the referees as a nullity: such rejection is ground of error, if in point of law, such reference was not a nullity, and the award of the referees ought to have been sustained.

In an agreement to refer to referees, an action pending in court, or perhaps where there is a simultaneous agreement to commence one, it is not necessary, under either the acts of 1705 or 1806, that the parties provide that the submission be made *a rule of court*. Such consent will be implied, in the absence of a contradictory provision.

*Sealing* the award is dispensed with, by the act of 28th March, 1808.

Our courts will give effect to an award made under a submission, according to its terms.

ERROR to the Common Pleas of *Montgomery county*.

This was an action of covenant, brought by Joseph Stilwell *vs.* Robert McAdams, on an indenture of apprenticeship made by Joseph Stilwell, then a minor, by the consent and advice of his father, Samuel Stilwell, and which was signed by Joseph Stilwell, Samuel Stilwell, and Robert McAdams, and witnessed by Jacob F. Lukens. The indenture, dated March 4, 1839, contained a covenant to teach the plaintiff the art and mystery of a cordwainer, and the other usual covenants to furnish meats, drink, apparel, freedom suit, &c. This suit was brought for damages, for breach of contract in the indenture. The narr. was not stated on the paper book.

August 17, 1846; defendant plead *non est factum*, and covenants performed, with leave to give the special matters in evidence.

Same day the case was submitted to referees by the following agreement of counsel:

Joseph Stilwell,     And now to wit: August 26, 1846.—It is
     *vs.*     hereby agreed that the above case be referred
Robert McAdams.     to Spencer Thomas, Spencer Shoemaker, and

William Michener, who, after they shall have been duly sworn or affirmed according to law, shall hear the parties, their proofs and allegations, and decide under the declaration filed by the above plaintiff, in said case, what amount he is entitled to have, of and from the said defendant, if any—whose report or decision shall be final and conclusive upon the parties.

And it is hereby further agreed, that whatever amount, if any, is found in favor of the plaintiff, the prothonotary of said court shall enter judgment in the said case for the amount, if any, so found as aforesaid. The said referees are also to determine as to the costs, and shall have authority to apportion the costs between the parties, if they should think any apportionment necessary and just.

And it is hereby agreed that the meeting of the referees and parties meet at the public house of Robert Thompson, in Fitzwatertown, on the 22d day of September next, 1846, at 10 o'clock, A. M., or upon such other day, to suit the convenience of both parties, if said day should not.

September, 22, 1846, the referees made the following report:

We the arbitrators within mentioned, met at the time and place within mentioned, and *being first duly qualified according to law*, and after having heard the parties through their counsel, their proofs and allegations, do find in favor of the plaintiff, the sum of eighty-five dollars, with costs of suit.

Witness our hands this twenty-second day of ninth month, eighteen hundred and forty-six.

Filed September 23, 1846.

October 2, 1846, defendant filed the following exceptions:

Exceptions to award.

1. The award was not made under the seals of the arbitrators or referees.

2. The arbitrators made a plain mistake in matters of law, in not making an award in favor of the defendant. The undisputed proof of a prior action and recovery by the above plaintiff, against the above defendant, on the same indenture declared on in this action, and the receipt of the money was a conclusive legal bar to plaintiff's recovery, and legally entitled the defendant to an award in his favor.

3. There is no subscribing witnesses to the agreement, to refer the matters in controversy in the above case, nor any affidavit that the same was duly executed by the parties, and the award was, therefore, illegally filed by the prothonotary.

4. No rule was made by the court upon the agreement in the above case, that the parties shall submit to and be finally conclud-

ed, by the arbitration of award, pursuant to said agreement or submission.

October 30, 1846, award set aside by the court.

Opinion of the court.

Stilwell *vs.* McAdams, No. 25, May term, 1846. In Common Pleas of Montgomery county. Exceptions to award of referees and opinion of court.

In Benson *vs.* Quiggle, 7 *Watts* 362, it is said by Justice Hous-TON that not entering a rule of court on record in cases of refer-ence is not matter of exception, as that was unusual in practice under the act of 1705. That statute however required a consent in the submission to such rule in terms, and they are repeated in the 6th section of the act of 1836, which embraces the former in substance. It may therefore be taken for granted as it was in 8 *Watts & Serg.* 43, on similar grounds, that "the legislature in-tended that thereafter they should be executed." The adminis-tration of justice suffers as well as the legal profession, if the statute and common law especially, when required in the institu-tion of legal proceedings, be not observed.

It is difficult to assign a place to this submission and award.—By the agreement of the parties, the referees shall decide the amount recoverable under plaintiff's declaration filed in the case, and for that the prothonotary shall enter judgment. It is not, therefore, under the 6th section of the act of 1836, for by that, independent of the question as to a consent for a rule of court, the award shall be proved by the court and entered of record, then it shall have the effect of a verdict, and the winning party shall have judgment. But this submission outs the court from all such interposition, and the prothonotary is made the only instrument in the first instance for the entry of judgment.

Nor is it under the preceding sections of that act. They sub-ject the party—who does not perform the award to the penalties of contemning a rule of court—which may be imprisonment of his person. But here there is no such rule of court either in fact or by construction, and consequently the case is not under these several provisions.

The act of 1806, also requires a rule of court, where the action is pending in court, and here it is pending. But besides this, the award must be made out under the hands and seals of the referees, and here their seals are not affixed to their signatures; under that act therefore, the award cannot be sustained.

How then is it at common law? That indeed knew of but one kind of submission and award in its ancient simplicity. It suf-fered parties who had not come into court to select their own tri-bunal for settlement of their disputes, and the referees were chosen by parol or in writing, and with or without a bond to bind them to

the award.   In Bemas *vs.* Quiggle it is said that if there was a
suit there was no reference at common law.   This is true of its
policy prior to the reign of 2d Charles, in which however a scheme
was devised by the court for the introduction of another, where
action had been commenced; according to that, a rule of court
was granted on consent of the parties litigant, to refer merchants'
accounts and such like perplexing matters before the jury, and on
that rule the award was enforced by process of contempt.   This
practice received legislative sanction in 9 and 10 *Wm.* 3d ch. 15,
extended to this State, which embodied it for the excellence of the
process to compel performance, and extended it to the ancient
submission, where no suit had been brought : *Kid.* 21, and *Ship-
pin's Opinion*, p. 326–8.   Two kinds of this mode of trial were
therefore known in the common law.   But this submission and
award agrees with neither of them—not with the first, since here
an action was pending, nor with the second, since that had its on-
ly foundation in a consent of the parties to a rule of court, being
indeed the handiwork of the court in its inceptive structure first
authorized by the parties.   It cannot therefore be maintained un-
der the statute or common law, and hence it is set aside by the
court.                                            D. KRAUSE.

Specification of errors.
1. The court erred in deciding that the submission and award
could not be maintained.
2. The court erred in setting aside the award, and in not per-
mitting the judgment entered thereon to be enforced.

November 1846, by leave of court, defendant plead specially
and gave notice.

That the plaintiff, Joseph Stilwell, before the commencement of
this suit, and after the expiration of his term of apprenticeship,
viz : in September, 1845, instituted an action on the same inden-
ture, before Fitzwater, a justice, for $25, for his freedom, as his
whole claim on the indenture; that plaintiff and Robert McAdams,
the defendant, referred all matters in dispute between them, to re-
ferees, who afterwards reported in favor of the plaintiff for the
sum of $20; that judgment was entered on the award, and that
sum with costs of suit was paid by McAdams, and accepted by
Stilwell, in full of all demands.

On the trial in October, 1848, plaintiff offered in evidence the
indenture, declared on and proved its execution by Fitzwater, one
of the subscribing witnesses.   Objected to, because there is an-
other subscribing witness not produced.   Admitted and defendant
excepts.

After plaintiff had closed, the defendant then offered to read

the notes of the testimony of Edward Sweeny, taken before the referees in this case, as above proved.   The plaintiff objects, and shows the record containing the proceedings of that reference, and alledges that no referees were legally appointed, but that the appointment was a nullity, and so decided by the court on defendant's exception to it on that point, and there was no authority to swear the witnesses and take the testimony as now offered from the notes of Mr. Sterigere.   Objection sustained and defendant excepts, and this bill sealed.            D. KRAUSE, [L. S.]

The defendant's counsel then offered and gave in evidence the docket of Justice Fitzwater, containing the record of the suit of Stilwell *vs.* McAdams, before referred to.

Plaintiff's counsel then claimed, only upon the counts in the narr. relating to defendant not having taught plaintiff the art and mystery of a cordwainer.

The court charged the jury that the action, shewn by Justice Fitzwater's docket, and the process and proceedings therein, and the testimony of the Justice relating thereto, was not a bar to plaintiff's recovery.

Oct. 19, 1848 ; verdict for plaintiff for $130—same day motion for new trial.

Aug. 31, 1849 ; motion for new trial overruled—Sept. 7th judgment on the verdict.

Sept. 24, 1849 ; defendant's death suggested, who, it was alledged, died Jan. 5, 1849—same day his Executors substituted as defendants.

Errors assigned :

1. The court erred in admitting the indenture given in evidence, to which there were two subscribing witnesses, on the production and proof of only one of such witnesses.   The plea of *non est factum* having been pleaded.

2. The court erred in refusing to allow the notes of testimony of Edward Sweeny, (who was examined as a witness for the defendant before the referees in this case,) taken by the defendant's counsel, after proof of witness's death, and of the notes of his testimony.

3. The court erred in charging the jury that the docket of the Justice, and process and proceedings in the action of Joseph Stilwell, (the plaintiff in this suit,) against Robert M'Adams, the defendant, commenced before Jacob Fitzwater, Esq., a justice of the peace, September 10, 1845, and the testimony of said justice, given in relation thereto, and the said action was not a bar to the plaintiff's recovery in this action.

4. The plaintiff was not entitled to recover in this action, under the pleadings and evidence in the cause.

5. The plaintiff declared on an "indenture made between Joseph Stilwell of *the one part,* and Robert McAdams of *the other*

part." The indenture given in evidence was an indenture under the hands and seals of *Joseph Stilwell, Samuel Stilwell and Robert McAdams*, (see Appendix A,) and was improperly admitted, and plaintiff cannot recover.

6. The plaintiff Joseph Stilwell *alone*, in his own name, cannot maintain an action on the indenture given in evidence, executed by *Joseph Stilwell, Samuel Stilwell, and Robert McAdams*, under their hands and seals, and he cannot recover in this action.

7. The motion for a new trial was overruled and judgment entered on the verdict after defendant's death, and before his death was suggested and his executors were substituted as defendants— three terms having intervened between the death and judgment, and without bringing in the executors by *scire facias*. See also specification of errors to the action of the court in setting aside the award.

The case was argued by *Sterigere* for McAdams, plaintiff in error, and by *Boyd* for defendant in error.

The opinion of the court was delivered by

BELL, J.—There is nothing in the first, fourth, fifth, sixth and seventh errors. Proof, by *one* of the attesting witnesses, of the due execution of the indenture, was sufficient to enable the plaintiff below, to put it in evidence. It is unnecessary to call all the subscribing witnesses to an instrument to make it competent: 1 *Greenleaf*, sec. 569. But were this otherwise, the rule of Court spread upon the paper book of the defendant in error, requiring a plea of *non est factum* to be verified by affidavit, is a sufficient answer to the objection. There was here no such verification.

The admission in evidence of the indenture was not objected to at the trial, for any supposed variance between it and the narr. Nor does the point seem to have been made, that the plaintiff could not maintain the action in his name alone, upon the supposition that his father Stilwell, was a party to the covenant relied on. But had it been, Velde *vs.* Levering, 2 *R.* 269, and Leech *vs.* Agnew, 7 *Barr.* 21, furnish a complete refutation of this position. Those cases settle that a father, guardian, or other *prochein ami*, who in Pennsylvania executes an indenture of apprenticeship, under our statute, in evidence of their assent, are not to be regarded as parties bound for the performance of the covenants. These are considered as the undertakings of the apprentice, and not of those whose assent, to this disposition of himself, is necessary to give validity to the instrument by which the engagement is effected.

The reply to the seventh error is conclusive. The death of the defendant below was not suggested upon the record, until after the rendition of the judgment.

This assignment of error, therefore, calls upon us to pass upon

a state of facts, of which the record furnishes no information.—
We are, consequently, not required to say what the rule would be,
were the facts sufficiently ascertained. I think, however, it may
be safely asserted, they would furnish no ground for interfering
with the verdict, though perhaps they might be esteemed a reason
for disturbing the judgment. But even this I do not mean posi-
tively to aver.

We are precluded from entering upon any examination of the
third error, which complains of the charge of the Court. A rule
of the Court of Common Pleas of Montgomery county requires
" that exceptions must be taken to the charge of the Court, before
the verdict is received," and this is in accordance with correct
practice, as indicated in Holden *vs.* Cole, 1 *Barr.*, 303. The Pres-
ident of the Court below certifies that no exception was taken to
the charge, either on the trial or afterwards. It is, therefore, not
within our province to review it.

Thus far nothing is perceived which calls for interference with
the judgment rendered below. But after reflection and examina-
tion of the authorities, we are satisfied the court fell into mistake
in rejecting the proffered repetition of the late Edward Sweeny's
testimony, before the referees, as reduced to writing, by the de-
fendant's counsel. It is conceded that, generally, what a deceased
witness said, on a former trial of the same cause, may be thus
proved. But the court rejected the evidence, because, as it was
thought, the submission under which the cause went to arbitra-
ment, was merely null, for which reason it was set aside on excep-
tions filed; from whence it results that what took place before the
referees, was *coram non judice*, and therefore ineffective for any
purpose. In considering this proposition, it may be admitted that
to warrant the introduction of secondary proof, of the character
here proposed, the jurisdiction of the tribunal before which the
dead witness testified, must be established; since without the pow-
er to *determine*, the ancillary right to investigate, *per testes*, can-
not exist. But it must also be agreed that if, in setting aside this
award, the court proceeded upon an erroneous assumption of the
invalidity of the submission, the evidence offered ought not to be
affected by the mistake; for it owed its competency, not to the
continued existence of the award, but to the original power to
make it. Thus, such testimony is available, after a new trial
granted, 2 *Starkies Ev.* 327; or a judgment reversed; Noble *vs.*
McClintock, 6 *Watts & Serg.* 58, neither of which subsequent
facts is permitted to impeach it. In estimating its sufficiency,
therefore, we are to enquire, on original ground, irrespective of
the mere destination of the award.

The record informed us that four exceptions were taken to this
award, three of which touched the sufficiency of the submission.
We have been favored with a copy of the opinion, delivered on the

[McAdams' Executors *v.* Stilwell.]

hearing of the rule to set aside the award, and from it we learn, that the rule was made absolute, because it was thought the submission was one unknown to our law. Though an action at law was pending, to which the submission expressly referred, it was said it could not be recognized as under the old act of 1705, or the more modern one of 1836, because these required a consent, expressed in the agreement to refer, that it should be made a rule of court. Besides, these statutes require an approval of the award by the court; whereas this agreement stipulated only for the action of the Prothonotary, in entering judgment; that it could not be taken as under the second and succeeding sections of the act of 1806, for that also required the submission to be made a rule of court; and fourth, that the award should be under seal; a form not exacted in this instance. But all our adjudications on this subject shew these objections to be too refined.

Our policy has been to encourage the settlement of litigation, through the intervention of referrees; a domestic tribunal, which long experience had shewn to be very useful and appropriate, in a large variety of cases. The courts have therefore refused to listen to merely formal objections, whether directed against the submission itself, or addressed to the award. Herman *vs.* Freeman 9, *Serg. & Rawle* 9. It was accordingly long ago settled, that the insertion of a formal agreement to make the submission a rule of court, is not necessary to its efficiency, under either the acts of 1705 or 1806, whenever an action is pending, to which the submission makes reference. Such consent will be implied, whenever the intent of the parties is apparent, and a simple reference to the pending action is held to make it so in the absence of a contradictory provision. It is unnecessary to run over all the cases that shew this. It may suffice to refer to Harris *vs.* Hayes, 6 *Bin.* 422, Large *vs.* Passmore, 5 *Serg. & Rawle* 51, Bemus *vs.* Quiggle, 7 *Watts* 364, where Mr. Justice HUSTON said he and his brethren thought they had never in fact known an instance, where it was expressly stated the reference was under a rule of court; that as the parties had a right so to refer, and could not be restrained by the court, it would be idle to ask for such a rule, and it never was asked; and in Kimmel *vs.* Shank, 1 *Serg. & Rawle* 24, where a pending cause was referred to three men " on whose decision, or a majority of them, judgment to be entered by the Prothonotary," it was held, that, as this reference could not be, under the compulsory arbitration law, it must be taken to be within the act of 1705. To these may be added Okison *vs.* Flickinger, 1 *Watts & Serg.* 257. There, though the court thought the award could not be supported, as within the provision of the act of 1806, because the submission did not expressly stipulate for a rule of court, there would be no difficulty in sustaining it, as within the act of 1705, which the act of 1836 has re-enacted, had the

[McAdams' Executors *v.* Stilwell.]

award been signed by *all* the referees. In the particular under consideration, there is in truth no difference in the provisions of these two statutes, as the court of Common Pleas seems to have supposed. The same liberal spirit, which induced the courts to overlook mere form, in giving effect to the elder, is the governing sentiment, when construing the younger act. It is true that, in Benjamin *vs.* Benjamin 5 *Watts & Serg.* 562, a case where at the time of the submission, there was no pending action, nor any agreement to enter one, it was thought the award made, could not be brought within the act of 1836, for want of a consent rule. But I think all the prior determinations shew this authority to be inapplicable where there are actions in court to which the submission refers, or a simultaneous agreement to commence one, for then there is a plain implication of an intended rule. And according to Massey *vs.* Thomas, 6 *Bin.* 333, the same implication obtains under the provisions of the act of 1806.

As to sealing the award it is dispensed with by the act of 28th March, 1808; Dunlop 257. Without, therefore, any particular straining, I am of opinion the award in question might have been upheld, under either of the statutes I have mentioned.

But if it be granted that this could not have been done, why was it not good as an agreement of the parties, entirely within their power to make? That our courts will give effect to an award made, under such submission, according to its terms, the case of Gallup *vs.* Reynolds, 8 *Watts* 424, is an express authority founded in strong reason and sound policy; and so, I take it, unimpeachable.

From what I have said, it will be perceived, we are of opinion the evidence rejected ought to have been received. For this error the judgment must be reversed.

Judgment reversed and a *venire de novo* awarded.